806 A.2d 334

**Martha K. PAPPANO**

v.

**CHEVY CHASE BANK, F.S.B., et al.**

No. 873, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Aug. 30, 2002.

672

Stephen H. Ring, Rockville, for appellant.

Christopher C. Fogelman (Erin J. Ashbarry and Gleason, Flynn, Emig & Fogleman, Rockville, Chartered on the brief for appellees, Chevy Chase Bank, F.S.B. and Chevy Chase Financial Services Corp.).

Sean H. Brogan (Stephen C. Baker, Drinker, Biddle & Reath, LLP, Philadelphia, PA, and Scott A. Thomas and Tydings & Rosenberg LLP, Baltimore, on the brief for appellees, American General Assurance Co., American General Indemnity Co., Security of America Life Ins. Co., United States Life Ins. Co., USLife Indemnity Co., and USLife Credit Life Ins. Co.).

Timothy F. McCormack and Gordon Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, on the brief for appellee, Union Security Life Ins. Co.

Argued before SALMON, SHARER and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

SHARER, Judge.

In this appeal, Martha K. Pappano, plaintiff below and appellant here, challenges the entry of summary judgment by the Circuit Court for Montgomery County in favor of appellees, Chevy Chase, F.N.B. and Chevy Chase Financial Services, Inc. (collectively, "the Bank"); American General Assurance Company, Security of America Life Insurance Company, United States Life Insurance Company, USLIFE Indemnity Company, USLIFE Credit Life Insurance Company (collectively, "American General"); and Union Security Life Insurance Company.[1]

---

1. Union Security Life did not file a brief. Upon inquiry at oral argument, we were advised by counsel for appellant that she had settled her claim against Union Security Life.

The basis for summary judgment was the trial court's finding that appellant's complaint was barred by the statute of limitations. Hence, we are presented with a single issue, which we rephrase for simplicity, as follows:

Did the trial court err in ruling that appellant's suit was barred by the statute of limitations?

We shall answer the question in the positive and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1990, appellant, Martha K. Pappano, and her husband, Leonard Anthony Pappano, applied to Chevy Chase Bank for a home equity credit line to be secured by their Gaithersburg, Maryland residence. At the closing on October 9, 1990, Mr. and Mrs. Pappano expressed, by filling in certain sections of the printed settlement sheet, their desire for credit life insurance on both their lives. At that time the Bank had a group policy of credit life insurance issued by Security of America Life Insurance Company. As provided by the group policy, the Bank could offer up to $50,000 in credit life insurance to eligible borrowers. Credit life insurance is procured for the purpose of paying off all or part of an outstanding loan balance upon the death of an insured debtor of the lender. Any payment under the credit life policy would have been made directly to the Bank, to be applied to the then outstanding balance of the mortgage or home equity loan.

The Bank was responsible for processing and transmitting its customer's insurance applications to Security of America. Security of America issued a policy of credit life insurance on appellant's life, not on both as requested, effective October 9, 1990, for the maximum amount. Neither the Bank nor Security of America issued a policy or certificate, or other documentation of coverage, to the Pappanos subsequent to the 1990 closing. Their monthly statement from the Bank did contain a charge for insurance, which they regularly paid. The monthly charge, unbeknownst to the Pappanos, was for single insurance coverage on the life of appellant, not on their joint lives as she recalls that they requested.

On July 15, 1994, the Bank terminated its group policy with Security of America and thereafter offered its customers credit life insurance through Union Security Life. No notice of the change in the group policy was provided to the Pappanos.

In July 1994, the Pappanos applied to the Bank for an increase of their home equity line of credit. A closing was held on July 18, 1994 at which, according to appellant, she and her husband again elected credit life insurance on both of their lives. That request, however, is not conclusive because the settlement sheet does not indicate whether the Pappanos clearly expressed a desire for insurance. The form provided a space for a check-off of whether the borrowers desire credit life insurance. An "x" was placed on the form, but partially on the line for "yes" and partially on the line for "no." Also, where the settlement sheet states premium amounts for either single or joint coverage, respectively, no amounts were entered. As before, the monthly statement contained an amount for insurance, which was timely paid. As before, the Pappanos were not provided with a policy or certificates by either the Bank or Union Security Life.

On August 19, 1996, Leonard Pappano died. According to Mrs. Pappano, she thereafter became responsible for handling numerous personal and family affairs, which previously had been seen to by her late husband, including the education of their children. In January 1997 she underwent major surgery.

Sometime in the spring of 1997, appellant inquired at a branch of the Bank as to whether life insurance benefits were payable as a result of her husband's death. The branch manager replied in the negative, but left appellant "with a sense that something was not right." She made at least two subsequent inquiries at the branch, and was told each time that no insurance existed.

In 1999 appellant decided to sell her residence. In connection with the sale and closing, the Bank, on July 21, 1999, addressed a letter to "Leonard Anthony Pappano" certifying

the payoff amount for the line of credit. Included in that statement was a line item reading: "Insurance (Credit Life): $54.47." After seeing this, on August 2, 1999, appellant contacted the Bank's benefits department to inquire if there was insurance on her husband's life. A bank employee responded that there was such coverage, but later recanted, saying that she had been mistaken, that the insurance coverage was on appellant's life only, and that there was no coverage on the life of Mr. Pappano.

On December 17, 1999, Mrs. Pappano filed a six count complaint against the Bank, sounding in both contract and tort. As the names of the various credit life insurance providers became known to her in the course of discovery, she twice amended her complaint.

Chevy Chase and American General filed motions for summary judgment pursuant to Md. Rule 2–501 asserting that appellant's claim was barred by the statute of limitations. The circuit court conducted a hearing on the motions at which all parties were represented. Union Security Life, having been served only days before the hearing, was likewise represented and its counsel moved orally for summary judgment.

After taking limited, and incomplete, testimony from appellant, the circuit court heard full argument from counsel for all parties. At the close of arguments, the court announced from the bench:

> The issue that is before me is whether or not her claim is barred by the applicable statute of limitations. I have to say that has been submitted, and the difficulty that I have is that the commencement of the statute of limitations is when the elements are present and the knowledge of the facts and circumstances are sufficient to put the plaintiff on appropriate notice to make inquiry, and there is no dispute that the plaintiff's husband died on August 19, 1996.
>
> The cause of action that is being asserted here today is negligent failure to obtain insurance, breach of a contract to procure insurance, and claims arising from that.

The plaintiff was on notice to make inquiry as of August 19, 1996. At that time she had a duty to seek out the facts supporting her cause of action.

The statute of limitations began to run as of that time. The lawsuit was not filed until after the three-year limitation ran.

Accordingly, I will grant the defendants' motion for summary judgment.

Immediately thereafter, counsel for Union Security orally moved to join the motions, which the court granted. The court then extended the summary judgment to Union Security Life as well as to all other defendants.

The circuit court later entered orders dated May 24, 2001 and June 8, 2001, from which this appeal has been taken.

## STANDARD OF REVIEW

As in any appeal from a grant of summary judgment, our review is to determine whether the trial court was legally correct. In assessing the rulings of the trial court, we recognize that "ordinary principles governing summary judgment ... continue to apply when the issue on summary judgment is [the statute of] limitations[.]" *Murphy v. Merzbacher*, 346 Md. 525, 531, 697 A.2d 861 (1997) (quoting *O'Hara v. Kovens*, 305 Md. 280, 304, 503 A.2d 1313 (1986)).

A summary judgment motion is not a substitute for trial. Rather it is used to dispose of cases when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. The standard for appellate review of a trial court's grant of summary judgment is whether the trial judge was legally correct in his or her rulings. In granting a motion for summary judgment, the trial judge may not resolve factual disputes, but instead is limited to ruling on matters of law.... If any inferences may be drawn from the well-plead facts, the trial court must construe those inferences in the light most favorable to the non-moving party. The existence of a dispute as to some non-material fact will not defeat an otherwise properly

supported motion for summary judgment, but if there is evidence upon which the jury could reasonably find for the non-moving party or material facts in dispute, the grant of summary judgment is improper.

*Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000) (citations omitted).

## DISCUSSION

### *Did the trial court err in granting appellees' motion for summary judgment on the basis of the statute of limitations?*

Maryland's statute of limitations, codified in Md. Code, Cts. & Jud. Proc., § 5–101, provides that "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Statutes of limitations are to be strictly construed. *Murphy,* supra, 346 Md. at 532, 697 A.2d 861. "[A]bsent a legislative creation of an exception, we 'will not allow any implied or equitable exception to be engrafted upon it.' " *Id.* at 532–33, 697 A.2d 861 (quoting *Garay v. Overholtzer,* 332 Md. 339, 359, 631 A.2d 429 (1993)). None of the exceptions referred to in § 5–101 is applicable to the present case. The elemental inquiry then becomes when did appellant know, or when should she have known, of the alleged failure of the Bank and the insurers to provide her and her late husband with the coverage for which they had bargained.

Section 5–101 provides guidance as to when a civil action is foreclosed, but does not define the word "accrue." "Absent such statutory definition, the question of when a cause of action accrues is left to judicial determination." *Harig v. Johns–Manville Products Corp.,* 284 Md. 70, 75, 394 A.2d 299 (1978). That judicial determination, adopted incrementally over decades, has become known as the "discovery rule." Concisely stated, the discovery rule allows for a statute of limitations to be triggered when a plaintiff knows or, with

the exercise of reasonable diligence, should have known, of the existence of an injury.

Speaking for the Court of Appeals *in Mattingly v. Hopkins,* 254 Md. 88, 92–93, 253 A.2d 904 (1969), Judge Finan said that,

[l]ike most general rules of law, those pertaining to "limitations" become less than profound when an attempt is made to apply them to specific cases. Much has been written as to when "limitations" should start to run. Some courts have held the cause of action accrues when the defendant commits his wrong, others when the plaintiff discovers the wrong, and still others have held that it does not accrue until the maturation of harm. Sometimes the happening of the wrong, the knowledge of it and the maturation of the harm are simultaneous. When this occurs the recognition of the accrual of the cause of action is simple, when these elements happen sequentially it can become complex. Furthermore, there are nuances of difference in the accrual of the cause of action in cases arising out of actions *ex contractu,* as distinguished from actions *ex delicto,* and a further hybridization of actions arising out of professional malpractice and otherwise.

In *Murphy v. Merzbacher, supra,* the Court of Appeals expanded the discussion of the discovery rule in *Harig v. Johns–Manville Corp.* and noted that

[t]he nature of some torts, however, belies this assumption [that a potential tort plaintiff is immediately aware of having been wronged]. Thus, when stealth, subterfuge, or other difficulties of detection leave a plaintiff "blamelessly ignorant" of the facts and circumstances legally entitling him or her to relief, the statute does not begin to run against the plaintiff, unless he or she knows, or through the exercise of reasonable diligence should know, of the wrong. Citations omitted. This so-called "discovery rule" is not so much an exception to the statute of limitations, as it is a recognition that the Legislature, in employing the word "accrues" in § 5–101, never intended to close our courts to plaintiffs inculpably unaware of their injuries.

*Murphy, supra,* 346 Md. at 532, 697 A.2d 861 (internal citations omitted).

The discovery rule in Maryland's body of law was first enunciated in *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917), a medical malpractice case. In the ensuing years, the Court of Appeals extended the discovery rule to other cases in which professional malpractice was alleged. See e.g. *Mattingly v. Hopkins,* supra (civil engineers); *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A.2d 359 (1969)(attorneys); *Feldman v. Granger,* 255 Md. 288, 257 A.2d 421 (1969) (accountants). Ultimately, in *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981), the approach of incremental application of the discovery rule according to the business or profession of a defendant was abandoned. In that case, involving a suit by a homeowner against a building contractor, the Court of Appeals said that

> [h]aving already broken the barrier confining the discovery principle to professional malpractice, and sensing no valid reason why that rule's sweep should not be applied to prevent an injustice in other types of cases, we now hold the discovery rule to be applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.

*Poffenberger v. Risser,* 290 Md. at 636, 431 A.2d 677.

In so ruling, the Court expressly abandoned any concept of implied notice as a basis for knowledge and held that,

> [a]ffirmatively speaking, we determine the discovery rule contemplates actual knowledge—that is express cognition, or awareness implied from
>
> > knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.

*Id.* at 637, 431 A.2d 677 (quoting *Fertitta v. Bay Shore Dev. Corp.,* 252 Md. 393, 402, 250 A.2d 69 (1969)) (quoting *Blondell v. Turover,* 195 Md. 251, 257, 72 A.2d 697 (1950)).

██ With that background, we turn to the facts of the present case and, in so doing, we construe inferences of fact in favor of appellant as the non-moving party. We know that suit was filed on December 17, 1999; therefore, if the triggering event occurred more than three years earlier, the claim is time-barred. As we have noted, the question is—when did her cause of action accrue?

Appellees urge upon us alternatives as to when appellant was on inquiry notice as to any breach by the Bank or other appellees. It is their position that appellant was on notice, at the latest, as of the date of death of her husband, August 19, 1996, if not as early as the days following the closing, when they did not receive documentation of insurance coverage. As to the former, it is their position that the cause of action was barred absolutely by August 19, 1999. As to their alternative, appellees suggest in their brief, and at oral argument, that the failure of the Bank, or the insurers, to provide documentation was sufficient to put appellant on notice. Were we to accept that position, limitations would have run even before the death of Mr. Pappano. We reject any notion that lack of documentation at the time of closing put appellant on inquiry notice. She believed that insurance was properly applied for and provided and, in fact, paid a monthly premium for insurance coverage. To impute to her actual knowledge or express cognition that the anticipated coverage was not provided as requested is a leap that we are unwilling to take, given the facts of this case.

Appellant, on the other hand, argues that the mere fact of the death of appellant's husband on August 19, 1996, did not trigger the running of the statute. It is her position that the earliest time that she was put on inquiry notice was in the spring of 1997, when she made her initial inquiry of the Bank as to the existence of credit life insurance coverage and was told that the coverage was on her life, not her late husband's.

On the question of when appellant should have known that no insurance benefits were available upon the death of her husband, we find *Jones v. Hyatt*, 356 Md. 639, 741 A.2d 1099

(1999), to be instructive. On July 25, 1985 Charles Jones and his wife were injured in a motor accident caused by one Smith while in the course of his employment with K & D Auto, Inc. When notified of the Joneses claim, K & D learned that it was not, in fact, insured, although it believed that liability insurance had been provided by Hyatt before July 25. On August 12, 1985, Hyatt informed Jones as to the lack of coverage for K & D. On June 21, 1989, the Joneses obtained judgment against Smith and K & D. On October 6, 1989, suit was filed against Hyatt by the Joneses' on a third party beneficiary theory. The circuit court denied relief to Hyatt on limitations grounds. This Court reversed in an unreported opinion. Certiorari was granted by the Court of Appeals. *Jones v. Hyatt Insurance,* 346 Md. 632, 697 A.2d 915 (1997). After distinguishing between a breach of an agreement to procure insurance coverage and breach of a condition of an issued policy of insurance, the Court held that "... the statute of limitations on the Joneses' ... cause of action in contract began to run as soon as Hyatt's failure to procure insurance of K & D *was discovered.*" *Jones v. Hyatt,* 356 Md. at 650, 741 A.2d 1099 (emphasis supplied). Because there was no factual dispute as to when both K & D and the Joneses learned of the non-existence of coverage, there was no issue of inquiry notice.

We agree with appellees that any breach, either of contract or a tort duty, by the Bank occurred at the date of closing of the home equity loan (or shortly thereafter) when the requested policy of insurance was not issued to the Pappanos. Because the question of the reasonableness of her actions is one of fact, a trier of fact could find, on the facts before us, that her cause of actions did not accrue until the spring of 1997 when she made inquiry of the Bank. Therefore, her suit, filed on December 17, 1999, was arguably filed within the applicable statute of limitations. We do not believe that failing to make inquiry between the date of her husband's death in July 1996, and her inquiry to the Bank in the spring of 1997, was per se unreasonable. The present factual scenario establishes a question of fact for submission to a trier of fact; it is not susceptible to resolution on summary judgment. Appellees

have cited us to no authority, and we have found none, either statutory, case law, regulatory, or otherwise, that would have compelled appellant to make a claim against the policy within a certain time after the death of her husband. Likewise, the master or group policy contains no limitations provision regarding stale claims.

■ We construe the facts, and the reasonable inferences from the facts, in favor of appellant. Those facts are set forth in her affidavit, filed in opposition to the appellees' motions for summary judgment, and tell us that appellant suffered depression following the death of her husband; that she was thrust into a position of having to deal with all family business and financial matters; that she was required to engage in a protracted health insurance coverage dispute with his former employer; and that in January 1997 she was required to have major surgery, the recovery from which was exacerbated by her childhood polio. Given those facts, we do not believe that her delay until the spring of 1997 was per se unreasonable.

Because we hold that the trial judge erred in granting summary judgment as a matter of law, we shall reverse and remand this case to the circuit court for a factual determination on the question of limitations.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT- GOMERY COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY APPELLEES.**