UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

COLONY APARTMENTS, Chapel Hill,
Limited Partnership,
             *Plaintiff-Appellant,*

v.

AIMCO RESIDENTIAL GROUP, L.P.,
             *Defendant-Appellee,*

ABACUS PROJECT MANAGEMENT,
INCORPORATED,
             *Defendant & Third Party*
                *Plaintiff-Appellee,*

and                                          No. 02-1815

EICHLER, FAYNE & ASSOCIATES;
INSIGNIA PROPERTY MANAGEMENT,
             *Defendants,*

v.

BALCOR REALTY INVESTORS, LTD.,
             *Third Party Defendant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-00-1514-AW)

Argued: April 3, 2003

Decided: April 30, 2003

Before WILKINS, Chief Judge, and MOTZ and
KING, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Stanley James Reed, LERCH, EARLY & BREWER, CHARTERED, Bethesda, Maryland, for Appellant. Sheila Christine Stark, PIPER RUDNICK, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Lauri E. Cleary, Suzanne S. Nash, LERCH, EARLY & BREWER, CHARTERED, Bethesda, Maryland, for Appellant. Cathy A. Hinger, PIPER RUDNICK, L.L.P., Washington, D.C., for Appellee Abacus; Rodney F. Page, BRYAN CAVE, L.L.P., Washington, D.C., for Appellee AIMCO.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

In this diversity case, the purchaser of an apartment complex brought suit for fraud, negligence, and related counts against the former manager of the complex and a company that had conducted a physical inspection of the property. The district court granted summary judgment to the defendants on limitations grounds. We reverse.

### I.

In 1996, Colony Apartments-Chapel Hill, L.P. ("Colony") purchased a 198-unit, multi-building apartment complex located in Chapel Hill, North Carolina from Balcor Company. Prior to the sale of the complex, AIMCO Residential Groups, L.P. ("AIMCO") had managed the property for Balcor. At the time of the sale, Abacus Management, Inc. ("Abacus") conducted a physical inspection of the property. After purchasing the complex, Colony hired Pinnacle Realty

Management Company to manage the property. Pinnacle employee Brenda Measamer was assigned to manage the complex.

Sometime after Colony purchased the complex, Ms. Measamer became aware of numerous problems with the property relating to water damage. Colony does not contest that in March 1998 it received actual notice of structural problems with the buildings resulting from water damage when maintenance staff discovered rotten floor joists. In 1999, Colony commissioned a new engineering report that revealed that the entire complex suffered from structural deficiencies. On May 24, 2000, Colony filed this action in the United States District Court for the District of Maryland, alleging causes of action against Abacus for professional negligence, negligent misrepresentation, and detrimental reliance, and against AIMCO for negligent and fraudulent misrepresentation.[1]

The district court granted the defendants summary judgment on the ground that the statute of limitations had run. Colony noted a timely appeal.

## II.

Because this is a diversity action,[2] the choice of law of the forum state, in this case Maryland, applies. *Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 173 n.5 (4th Cir. 2002) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)). Under Maryland's conflict of laws rules, "when a cause of action accrues in one state and the adjudicatory forum of the action lies in another state," courts apply "the procedural law of the forum state, and the . . . substantive law of the place (state) of the wrong." *Naughton v. Bankier*, 691 A.2d 712, 716 (Md. Ct. Spec. App. 1996) (citations omitted). Implicitly concluding (without demurral from the parties) that the statute of limitations

---

[1] This complaint was later amended to correct the name of a defendant and add a third defendant who was later dropped. The substantive claims, however, have never changed.

[2] Colony is a Maryland limited partnership with its principal place of business in Maryland. Abacus is an Arizona corporation with its principal place of business in Arizona. AIMCO is a South Carolina corporation.

defense raises a procedural issue, the district court proceeded to apply the Maryland law of limitations.

The Maryland Code provides that "[a] civil action at law shall be filed within three years from the date it accrues . . . ." Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2002). Because the statute does not define the term "accrues," determination of when an action accrues has been left to the courts, which have adopted the "discovery rule." *Pappano v. Chevy Chase Bank*, 806 A.2d 334, 338 (Md. Ct. Spec. App. 2002) (citation omitted). Under the discovery rule, "a statute of limitations [is] triggered when a plaintiff knows or, with the exercise of reasonable diligence, should have known, of the existence of an injury." *Id.*

> [I]n simple terms, a plaintiff is only on inquiry notice, and thus the statute of limitations will begin to run, when the plaintiff has "knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[ ] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort]."

*Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796, 802 (Md. 2000) (quoting *O'Hara v. Kovens*, 503 A.2d 1313, 1324 (Md. 1986)).

Furthermore, like federal law and that of most states, under Maryland law "[t]he court shall enter [summary] judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(e). "If the facts are susceptible of more than one inference, the materiality of that arguable factual dispute must be judged by looking to the inferences that may be drawn in a light most favorable to the party against whom the motion is made." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 972 (Md. 2000) (citations omitted). Furthermore, because "the question of notice generally requires the balancing of factual issues and the assessment of credibility or believability of the evidence . . . 'whether or not the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence . . . is ordinarily a question of fact for the jury.'" *Id.* at 974 (quoting *O'Hara*, 503 A.2d at 1320).

Thus, the issue before us is whether, taking the facts in the light most favorable to Colony, the defendants were entitled to judgment as a matter of law that Colony had inquiry notice of structural defects in the complex more than three years prior to filing its compliant (*i.e.*, before May 24, 1997), or whether a reasonable jury could conclude otherwise.

### III.

The district court concluded as a matter of law that prior to May 24, 1997, "Ms. Measamer was on notice of facts which would lead an ordinary prudent person to investigate the structural soundness of the buildings." The court based its conclusion on several tenant surveys received by Ms. Measamer prior to May 24, 1997:

> [O]ne survey said, "The dampness that is under our 1st floor apt — it makes our carpet smell musty & moldy — we have allergies — this isn't good for our health — we've told the staff — they didn't seem to believe us . . . ✔ into the dampness under building L. A phone repairmen [sic] said there is water under our apt." Another survey noted, "Since the way to the front of main entrance N1, 2, 3, 4 is lower than the surround (sic) area, there is a lot of water when it rains. So *please fix it*." A third survey stated, "Mildew odor difficult to tolerate. Entrance ways (carpet, smell) are unsightly." Another tenant complained that "There was a lot of insulation that fell which I had to clean up . . . Turning on the hot water, I have a rush of orange / brown water which eventually cleared but this is absurd! . . . I have water stains all over my ceiling. Repainting doesn't solve the problem. The wood in the roof is probably rotten or at least has holes in it." Finally, another tenant reported, "Drainage for all those beautiful new machines is inadequate, hence — wet and dirty floors."

The court also noted that in Ms. Measamer's deposition testimony, she stated "that on January 7, 1997, she received her first tenant complaint regarding water leaks or wetness within apartment walls or

bathrooms, i.e., that 'Apartment L-13 bathroom ceiling is coming down.'"[3]

These complaints do not suffice to entitle the defendants to judgment that as a matter of law, Ms. Measamer, and so Colony, were on inquiry notice of structural defects in the buildings. To be sure, it is arguable that Colony's "failure to discover [its] cause of action was due to failure on [its] part to use due diligence." *O'Hara*, 503 A.2d at 1320 (internal quotation marks and citations omitted). However, it is also arguable that Colony's actions were objectively reasonable under the circumstances. This determination "is . . . a question of fact for the jury." *Id.* (internal quotation marks and citations omitted).

For several reasons, it is "at least debatable" whether Colony was "aware of facts sufficient to warrant investigation," *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1164 (Md. 1988) (citation omitted), into the structural soundness of the buildings. First, Abacus had conducted a physical inspection of the complex only months before Ms. Measamer received the tenant surveys, and the Abacus report identified no structural defects or plumbing problems. It could be argued that Colony acted reasonably in relying on this report and in not immediately commissioning a second study of the complex's structural soundness. Second, Ms. Measamer testified, without contradiction, that the nature of the complaints was "fairly minor and fairly standard," and "typical." Ms. Measamer also testified that the cause of problems such as a tile coming down around the bathroom could be different from what caused the structural damage that was later discovered. Third, as the district court itself acknowledged, only one or two of the complaints have implications as to the structural integrity of the building. And even these complaints indicate a problem in only one out of the fifteen buildings in the complex.

Notwithstanding this evidence, the district court granted summary judgment to the defendants, reasoning:

---

[3]Similarly, Abacus cites a letter dated December 20th, 1996, in which Ms. Measamer describes rotting columns, four of which "are actually structural." However, Ms. Measamer later explained unequivocally that the columns were *not* structural, but were simply decorative.

It is difficult to believe that a [sic] ordinary prudent person who reviewed the tenant surveys and discussed them with another manager would not have investigated further into the tenants' complaints. . . . Based on the tenant surveys and complaints in which Ms. Measamer was involved, it appears that she was put on inquiry notice as to some structural problems.

Rather than deciding whether defendants were entitled to a *judgment as a matter of law* that the tenant surveys put Ms. Measamer on inquiry notice of structural problems, the district court made its own determination as to whether Ms. Measamer's actions were objectively reasonable, "find[ing]" implied knowledge of structural deficiencies. Indeed, by using language such as "it appears" and "it is difficult to believe," the court itself seems to suggest the possibility of an alternate conclusion. Moreover, in refusing to credit Ms. Measamer's uncontroverted characterization of the complaints as "fairly minor and fairly standard," the court engaged in an implicit credibility assessment, and made its own factual determination that the complaints unequivocally suggested structural problems. A jury may so hold, but such questions are "not susceptible to resolution on summary judgment." *Pappano*, 806 A.2d at 341.

## IV.

For these reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*