**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-2109**

_____

COLONY APARTMENTS, Chapel Hill,

                              Plaintiff - Appellant,

      versus

ABACUS PROJECT MANAGEMENT, INCORPORATED,

                  Defendant & Third Party Plaintiff - Appellee,

AIMCO RESIDENTIAL GROUP, L.P.,

                              Defendant - Appellee,

      and

EICHLER, FAYNE & ASSOCIATES; INSIGNIA
PROPERTY MANAGEMENT,

                                        Defendants,

      and

BALCOR REALTY INVESTORS, LTD,

                        Third Party Defendant.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.
(CA-00-1514-AW)

_____

Argued: May 22, 2006                    Decided: July 25, 2006

---

Before WILKINS, Chief Judge, and MOTZ and KING, Circuit Judges.

---

Affirmed in part and reversed and remanded in part by unpublished per curiam opinion.

---

**ARGUED:** Stanley James Reed, LERCH, EARLY & BREWER, CHARTERED, Bethesda, Maryland, for Appellant.  Rodney F. Page, BRYAN, CAVE, L.L.P., Washington, D.C.; Sheila Christine Stark, DLA PIPER RUDNICK GRAY CARY US, L.L.P., Reston, Virginia, for Appellees.  **ON BRIEF:** William B. Schroeder, LERCH, EARLY & BREWER, CHARTERED, Bethesda, Maryland, for Appellant.  Rebecca A. Ford, BRYAN, CAVE, L.L.P., Washington, D.C., for Appellee AIMCO Residential Group, L.P.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

In 1996, Colony Apartments-Chapel Hill L.P. ("Colony") bought an apartment complex in Chapel Hill, North Carolina that, it subsequently learned, contained severe structural flaws caused by water damage to wooden floor joists. After discovering the damage, Colony filed this diversity action against two companies involved in the sale of the complex. First, Colony sued Abacus Project Management, Inc., which prepared a structural analysis for Colony's lender, claiming that Abacus committed professional negligence and made negligent misrepresentations. Second, Colony sued AIMCO Residential Group, L.P., which managed the property, claiming that an AIMCO employee made negligent and fraudulent representations about the condition of the complex. The district court awarded summary judgment to both Abacus and AIMCO. We affirm with respect to AIMCO, but reverse the grant of summary judgment to Abacus.

I.

In 1996, Colony purchased a 14-building, 198-unit apartment complex located in Chapel Hill, North Carolina for $7.1 million. Two of Colony's five general partners, Michael Brodsky and Victor Rosenberg visited the complex prior to Colony's purchase. Brodsky made two trips to the complex in the summer of 1996, spending a total of four hours on the premises. In September 1996, Rosenberg spent approximately two to two-and-a-half hours on site. Brodsky

3

and Rosenberg each spoke with the resident property manager (and AIMCO employee) William Peebles. When asked about any major maintenance issues, Peebles told Brodsky only that there were problems with some of the heating and air conditioning units, and with wooden columns on the exterior of some of the buildings.

Colony financed the purchase of the building with a loan from Eichler, Fayne & Associates ("EF&A"). Prior to closing the sale, EF&A hired Abacus to perform a Fannie Mae Delegated Underwriting Service Physical Needs Assessment Report ("DUS Report") for the property. That DUS Report revealed no major structural damage. Colony ultimately obtained a copy of that report from John Eames, a representative of First State Holdings, Inc., which had contracted to buy the property prior to Colony's purchase of it.

In 1998, Colony learned of severe structural damage to the building, particularly water damage in the first floor units. In October 1999, Colony hired Bay Design to perform an engineering report. That report indicated the structural problems should have been discovered by Abacus when it prepared the DUS Report.

On May 24, 2000, Colony filed this action alleging that Abacus committed professional negligence and made negligent misrepresentations in producing the DUS Report, and that AIMCO made negligent and fraudulent misrepresentations through its employee, William Peebles. In response, Abacus and AIMCO filed three motions: (1) a motion for summary judgment on the merits, (2) a

4

second motion for summary judgment on statute of limitations grounds, and (3) a motion to strike plaintiffs' proposed expert testimony in light of inadequate disclosure. The district court granted defendants' second summary judgment motion (on limitations grounds), denying the first summary judgment motion and motion to strike as moot.

Colony retained new counsel on appeal. After oral argument, we reversed the judgment of the district court, holding that the action was not barred by the statute of limitations. See Colony Apartments v. AIMCO Residential Group, L.P., 63 Fed. Appx. 122 (4th Cir. 2003).

On May 11, 2004, after remand, both Abacus and AIMCO moved to renew their motions for summary judgment. Three days later, on May 14, Colony filed a motion for leave to "File Supplemental and Amended Rule 26(a)(2) Expert Witness Disclosure Statement." The district court denied Colony's motion to supplement, finding that it had not met the "excusable neglect" standard imposed by Federal Rule of Civil Procedure 6(b), but granted Abacus and AIMCO's motions to renew their summary judgement motions on the merits.

Colony then requested permission to update its previously filed opposition to defendants' summary judgment motions. After denying that motion, again finding that Colony failed to establish excusable neglect, the district court granted Abacus and AIMCO's motions for summary judgment. Colony noted a timely appeal.

5

II.

Colony first alleges that the district court erred in granting summary judgment to Abacus. It disputes the court's finding that Abacus owed no duty to Colony.

To determine whether Abacus owed a duty to Colony -- a third party with which it had no contractual relationship and to whom it did not give its report -- North Carolina courts[1] apply the analysis set forth in the Restatement (Second) of Torts § 552 (1977). See Raritan River Steel Co. v. Cherry, Bekaert & Holland, 367 S.E.2d 609, 617 (N.C. 1988); Ballance v. Rinehart, 412 S.E.2d 106, 109 (N.C. App. 1992). Under this approach, a professional providing information owes a duty to any "person or one of a limited group of persons for whose benefit and guidance [the professional] intends to supply the information or knows that the recipient intends to supply it." Restatement (Second) of Torts § 552 (1977).

"It is not enough that the maker merely knows of the ever-present possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." Id. cmt. h; Ballance, 412 S.E.2d at 109. At the same time, however, "[t]he Restatement's text does not demand that the [professional] be informed by the

---

[1]In diversity actions we follow the law of the forum state. See Limbach Co. LLC v. Zurich American Ins. Co., 396 F.3d 358, 361 (4th Cir. 2005). Maryland's choice of law rule requires us to apply the law of North Carolina, where the tort occurred. Rhee v. Combined Enterprises, Inc., 536 A.2d 1197, 1198-99 (Md. App. 1988).

6

client himself of the [work product]'s intended use." Raritan, 367 S.E.2d at 617. "If he knows at the time he prepares his report that specific persons, or a limited group of persons, will rely on his work, and intends or knows that his client intends such reliance, his duty of care should extend to them." Id.

The question in this case, then, is whether Colony was one of a class of persons that Abacus intended would rely on the DUS Report, or whether Abacus knew that EF&A so intended. The district court, relying on a disclaimer in the DUS Report forbidding any party other than EF&A from relying on the report without Abacus's consent, concluded that Colony did not fall within the class described by § 552. The disclaimer, however, cannot bear the weight the district court placed on it.

At oral argument, Abacus's counsel conceded that notwithstanding the disclaimer, First State Holdings, Inc. was entitled to rely on the report because its name appeared on the cover page of the DUS Report. At the time, First State intended to borrow money from EF&A to purchase the complex,[2] and EF&A specifically requested that Abacus list First State as a recipient of the DUS Report. This concession demonstrates that Abacus knew someone other than EF&A was going to rely on the DUS report. And it raises questions not addressed by the district court --

_____

[2]The record does not explain how Colony, rather than First State, came to purchase the complex.

7

specifically, whether EF&A intended that any eventual purchaser would rely on the report, and what Abacus knew of EF&A's intent.

This ambiguity precludes summary judgment, which is appropriate only if there are no disputed issues of material fact, viewing the record in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fed. R. Civ. P. 56(c). The parties clearly dispute whether EF&A intended that a specific purchaser, or any purchaser, rely on its report. That dispute is undoubtedly material; Abacus even conceded that the case would be very different if the report were addressed to a generic purchaser rather than to First State. Therefore, we reverse the grant of summary judgment to Abacus, and remand to the district court for further proceedings.

III.

Colony next asserts that the district court erred in awarding summary judgment on its negligent and fraudulent misrepresentation claims against AIMCO. Its allegations arise out of conversations between an AIMCO employee, William Peebles, and two Colony representatives, Michael Brodsky and Victor Rosenberg. Peebles served as the on-site property manager for Colony Apartments beginning in July 1995, approximately one year before the sale of

the building.[3]  Colony alleges that Peebles misrepresented the condition of the building in responding to questions from Brodsky and Rosenberg.  Specifically, when asked what maintenance issues existed at the property other than normal repairs, Peebles indicated that "the property was in fine condition and there were no items to worry about other than the heating and cooling of the property, as well as some exterior wood columns that needed to be replaced."

Colony asserts that this was a misrepresentation because Peebles was aware of "extensive structural repairs to units suffering from water damage."  Brief of Appellant at 35.  AIMCO contests this assertion, noting that Colony points to no evidence demonstrating Peebles' knowledge of significant structural repairs, and that in a deposition the contractor who performed these repairs recalled only one repair made during the time Peebles worked at the complex.

This factual dispute, however, does not preclude summary judgment.  Even assuming that Peebles was aware of, but remained silent about, the structural damage, Colony's reliance on his statements was objectively unreasonable.  That reliance would directly contradict the terms of the written sale agreement, which states:

---

[3]At the time of the sale, Insignia Residential Group, LP employed Peebles.  Insignia is now known as AIMCO.

> Seller acquired title to the property by foreclosure . . . . Seller can make no representations or warranties relating to the condition of the Property . . . . Purchaser acknowledges and agrees that it will be purchasing the Property . . . <u>based solely upon its inspections and investigations</u> . . . and that Purchaser will be purchasing the Property . . . "AS IS" and "WITH ALL FAULTS" . . . . Purchaser acknowledges that . . . <u>neither Seller nor its consultants, brokers, or agents have made any representations or warranties of any kind</u> upon which Purchaser is relying as to any matters concerning the Property . . . including, but not limited to, the condition of the land or any improvements comprising the Property . . . .

Moreover, the sale agreement included an integration clause providing that "[t]his Agreement constitutes the entire agreement between the parties and supersedes all other negotiations, understandings, and <u>representations</u> made by and between the parties and the [sic] agents, servants, and employees."

Given these contract terms, Colony's asserted reliance on Peebles's statements is objectively unreasonable. <u>See, e.g.</u>, <u>Hardee's of Maumelle, Ark., Inc. v. Hardee's Food Sys., Inc.</u>, 31 F.3d 573, 576 (7th Cir. 1994); <u>Motor City Bagels, LLC v. American Bagel Co.</u>, 50 F. Supp. 460, 472, 474 (D. Md. 1999); <u>Rosenberg v. Pillsbury Co.</u>, 718 F. Supp. 1146, 1152-53 (S.D.N.Y. 1989).

Moreover, even absent this contractual language, we would find Colony's reliance unreasonable. "The right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him." <u>Libby Hill</u>, 303 S.E.2d at 569 (quotation marks omitted). Colony failed to act with the required

10

diligence when it relied on Peebles's statements. Despite negotiating to purchase a $7.1 million building, Colony decided not to spend the $25,000 required for an engineer to perform a building assessment. Instead, Brodsky and Rosenberg simply made three trips to the property. While on site, Brodsky spoke to the property manager and maintenance supervisor, as well as a few tenants, and viewed approximately twenty to thirty units. And although Brodsky reviewed statements of how money was spent on capital improvements, he did not ask to review maintenance records. Rosenberg spent only two and a half hours on site, meeting with Peebles and visiting the model apartment and one other occupied unit.

This limited diligence failed to uncover structural defects that, according to Colony's own complaint, "were readily discernible" at the time it bought the building. Colony cannot escape the consequences of its failure to act with adequate diligence by claiming that it justifiably relied on the vague oral representations of the building manager who was neither an engineer nor an architect, and had worked at the thirty-five year old property only for one year.

Because both negligent and fraudulent misrepresentation claims require a plaintiff's reliance be reasonable, See Raritan, 367 S.E.2d at 612; Libby Hill Seafood Restaurants, Inc. v. Owens, 303 S.E.2d 565, 568 (N.C. App. 1983), Colony cannot prevail against AIMCO. We affirm the grant of summary judgment to AIMCO.

11

IV.

Colony next argues that the district court abused its discretion in denying Colony's request, after our remand, to supplement its expert disclosure under Federal Rule of Civil Procedure 26. This argument fails.

Rule 26 requires a party to notify the court "if the party learns that in some material respect the information disclosed is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). But this duty does not permit a party to make an end-run around the normal timetable for conducting discovery. Instead, it requires that "any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due." Id. (emphasis added). Because Rule 26(a)(3) requires that disclosure be made at the time "directed by the court," the relevant deadline for supplementation of expert witness disclosures in this case was the end of the discovery period provided by the district court's original scheduling order -- a date that passed six months prior to the district court's first grant of summary judgment.

As Colony's motion was untimely under Rule 26, Rule 6(b)(2)'s "excusable neglect" standard applies. That Rule provides in relevant part:

> When by these rules . . . or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of

12

the specified period permit the act to be done where the failure to act was the result of <u>excusable neglect</u>.

Fed. R. Civ. P. 6(b)(2) (emphasis added). "'Excusable neglect' is not easily demonstrated, nor was it intended to be." <u>Thompson v. E. I. DuPont de Nemours & Co.</u>, 76 F.3d 530, 534 (4th Cir. 1996). In determining whether a party has shown excusable neglect, a court will consider: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. <u>Id.</u> at 533. The most important factor is the third -- the reason for the delay. <u>Id.</u> at 534. Merely establishing these elements does not entitle a party to relief; rather, "whether to grant an enlargement of time still remains committed to the discretion of the district court." <u>Id.</u> at 532 n.2. We therefore review an excusable neglect ruling for abuse of discretion. <u>See</u> <u>United States v. Borromeo</u>, 945 F.2d 750, 754 (4th Cir. 1991).

The district court concluded that Colony's motion resulted from its desire to "improve its case and attempt to correct what it perceives as the mistakes of prior counsel." The court also found that Colony, "plainly concerned that the Motion to Strike [Colony's expert] will be successful," sought to "address[] the Defendant's stated concerns about the adequacy of expert designations previously provided by Colony's former counsel." Finally, the court concluded that Colony had not sufficiently demonstrated its

13

expert's unavailability (although it left open the possibility of allowing Colony to replace that expert if the case proceeded past summary judgment). Like the district court, we think it clear that the failings of prior counsel do not constitute excusable neglect.[4] See, e.g., Thompson, 76 F.3d at 533 ("[T]he [Supreme] Court specifically observed that it was appropriate to hold a client accountable for the mistakes of counsel."). We therefore affirm the district court's decision not to allow Colony to supplement its expert disclosures.

V.

Finally, Colony asserts that the district court erred in permitting Abacus and AIMCO to renew their summary judgment motions and in denying Colony's request to supplement its opposition to those motions. These arguments too must fail.

Colony cites no authority -- and we know of none -- to support the proposition that the district court lacked the authority to permit renewal of the summary judgment motions on the merits. The

---

[4]Colony implies that the district court erred in concluding that it was only seeking to update the work of its prior counsel. See Brief of Appellant at 48-49 (noting that supplementation was required to introduce evidence about the "Arizona litigation" between Abacus and EF&A). The district court considered and rejected that interpretation of Colony's motivation for filing its motion to supplement. We are bound by that factual finding unless it is clearly erroneous. See In re Vitamins Antitrust Class Actions, 327 F.3d 1207, 1209 (D.C. Cir. 2003). We do not think it is.

14

parties fully briefed those motions, and their arguments were in no way affected by our prior ruling.  Thus, the court acted entirely within its discretion.

Colony's claim that the district court erred by denying it the right to update its oppositions also fails.  Colony's request came after the expiration of the pre-trial discovery order and briefing schedule.  Colony had plenty of time to file its response to these summary judgment motions.  Indeed, it <u>did</u> file a response.  Hence, in order to file this untimely, updated brief, Colony must satisfy the excusable neglect standard of Rule 6(b)(2).

As with the motion to supplement, Colony cannot demonstrate excusable neglect because it cannot establish sufficient reason for the delay.  The district court again attributed to Colony "a desire to re-do much of prior counsel's efforts, now finding them somewhat lacking."  We agree, and therefore find no abuse of discretion in the district court's refusal to allow Colony to supplement its opposition to summary judgment.

VI.

For all the foregoing reasons, the judgment of the district court is

<u>AFFIRMED IN PART AND REVERSED<br>AND REMANDED IN PART</u>.

15