Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 21, 2003   Decided May 6, 2003

No. 02-7025

IN RE: VITAMINS ANTITRUST CLASS ACTIONS

———

Appeal from the United States District Court
for the District of Columbia
(No. 99ms00197)

———

*Jeffrey S. Cashdan* argued the cause for appellant UCB Chemicals Corporation. With him on the briefs was *Kevin R. Sullivan*. *Jeffrey S. Bucholtz* entered an appearance.

*Gerald G. Saltarelli* argued the cause and filed the brief for appellee Hill's Pet Nutrition, Inc.

Before: GINSBURG, *Chief Judge*, and SENTELLE and RANDOLPH, *Circuit Judges*.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, *Circuit Judge*: UCB Chemicals Corporation appeals from a February 22, 2002 order of the district court granting Hill's Pet Nutrition Inc.'s ("Hill's Pet") Motion to Modify the Final Order Approving Class Settlement and Final Judgment entered by the district court on November

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

30, 2001. We affirm the order because the district judge did not abuse his discretion when he found that Hill's Pet's neglect in failing to timely opt out of the settlement was excusable.

Background

The class settlement at issue in this case is one of the many federal antitrust actions alleging price-fixing by suppliers of vitamins. The claims against UCB and other providers of choline chloride were consolidated before a single judge of the United States District Court for the District of Columbia under the title *In re Vitamins Antitrust Litigation* for pre-trial proceedings. On July 25, 2001, the district court entered an order certifying the UCB Settlement Class and prelimi-narily approving the proposed settlement, in which UCB agreed to pay $9 million for a complete release of claims against it. The order contained a plan for notifying class members of the settlement. The plan provided for mailing notices to class members as well as publishing notices in widely read industry periodicals and the *Wall Street Journal.* The notices expressly stated that members would be bound by the settlement and could opt out by sending a written request postmarked before or on September 28, 2001. The Claims Administrator mailed a notice to Hill's Pet's corporate parent, at the same address to which prior notices, which had elicited responses, had been sent. The notice was also posted online. On November 30, 2001, the district judge entered a final judgment approving the settlement. When Hill's Pet's counsel reviewed an exhibit attached to the final order, on December 10, 2001, he discovered that Hill's Pet was not listed among the class members who had timely opted out. Two days later, he filed a Motion to Modify the Final Order Approving the Class Settlement and Final Judgment to allow Hill's Pet to opt out of the settlement. The court granted this motion pursuant to Fed. R. Civ. P. 6(b) and 60(b) after finding that Hill's Pet's failure to file a timely opt-out notice was the result of excusable neglect, not bad-faith, and that UCB would not be substantially prejudiced.

Analysis

This court reviews the district court's decision for abuse of discretion, which allows for reversal only if the district court applied the wrong legal standard or relied on clearly erroneous findings of fact. *See Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992); *Linder v. Dept. of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998). The district court had discretion, pursuant to Fed. R. Civ. P. 6(b) and Fed. R. Civ. P. 60(b), to modify its order so that Hill's Pet would be able to opt-out of the settlement beyond the agreed opt-out date. Rule 6(b) states that "the court for cause shown may at any time in its discretion . . . permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b). Additionally, Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect, . . . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b).

The Supreme Court addressed the meaning of "excusable neglect" in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). The Court set forth factors to consider when determining what kind of neglect will be considered "excusable." These include: (1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* at 395. The district judge in the current case evaluated the factors articulated, and found that UCB would not be substantially prejudiced by Hill's Pet's untimely opt-out; the length of the delay was short and would not impact judicial proceedings; and that there was no indication that Hill's Pet had acted in bad faith. The court also found that the reason for the delay was within Hill's Pet's reasonable control but that the other factors outweighed the impact of this finding, and consequently granted Hill's Pet's motion to modify the final order.

4

On appeal, UCB urges this court to adopt a *per se* rule that garden variety attorney inattention can never constitute excusable neglect. We decline and uphold the district court. The *Pioneer* standard precludes the adoption of any such *per se* rule. The Court in *Pioneer* purposely fashioned a flexible rule which, by its nature, counsels against the imposition of a *per se* rule on attorney neglect. "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' . . . is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392. *See Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (applying the excusable neglect standard without emphasis on any particular *Pioneer* factor.)

UCB argues that some of our sister circuits have suggested that certain types of attorney neglect can never constitute excusable neglect. The Eighth Circuit has stated in a recent case, "Notwithstanding the 'flexible' *Pioneer* standard, experienced counsel's misapplication of clear and unambiguous procedural rules cannot excuse his failure to file a timely notice of appeal." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 464 (8th Cir. 2000). Likewise, the Eleventh Circuit has held, "an attorney's misunderstanding of the plain language of a rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline." *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997). We note that we doubt the applicability of such precedents to the present case because each involves an attorney's failure to file a timely notice of appeal, an issue of special interest to the courts of appeal. *Lowry*, 211 F.3d at 458; *Advanced Estimating Sys.*, 130 F.3d at 997. By contrast, the current case involves a case-management decision in a complex class action, in which district court discretion is at its greatest. In any case, because we find the question of whether attorney error may constitute "excusable neglect" is within the discretion of the district court and the court did not abuse its discretion, we will affirm the modification of the final judgment.