Timothy PIGFORD, et al., Plaintiffs,

v.

Ann VENEMAN, Secretary, United States Department of Agriculture, Defendant.

Cecil Brewington, et al., Plaintiffs,

v.

Ann Veneman, Secretary, United States Department of Agriculture, Defendant.

No. CIV.A. 97–1978(PLF), CIV.A. 98–1693(PLF).

United States District Court, District of Columbia.

June 2, 2003.

Jacob A. Stein, Stein, MITCHELL & MEZINES, Washington, DC, Alexander John Pires, Jr., Conlon, Frantz, Phelan & Pires, Washington, DC, David A. Branch, Washington, DC, Anthony Herman, Covington & Burling, Washington, DC, Richard Talbot Seymour, Lieff, Cabraser, Heimann & Bernstein, LLP, Washington, DC, J. L. Chestnut, Jr., Chestnut, Sanders, Sanders, Pettaway, Campbell & Albright, Selma, AL, for Plaintiffs.

Terry M. Henry, United States Department of Agriculture, Susan Hall Lennon, U.S. Department Of Justice Civil Division, Washington, DC, Daniel Edward Bensing, U.S. Department Of Justice Federal Programs Branch, Washington, DC, Mailstop NJ, Federal Trade Commission Bureau of Consumer Protection, Washington, DC, David Monro Souders, Weiner Brodsky Sidman & PC, Washington, DC, Michael Sitcov, United States Department of Civil

Division, Federal Programs Branch, Washington, DC, for Defendants.

### *OPINION AND ORDER*

**PAUL L. FRIEDMAN**, District Judge.

The Court has before it plaintiffs' motion for relief for four groups of claimants who filed petitions for Monitor review, as well as defendant's opposition and plaintiffs' reply.[1] Plaintiffs seek relief for a total of 350 individual claimants whose petitions for Monitor review were deemed untimely by the Facilitator and not forwarded to the Monitor for consideration, based on the Facilitator's determination that either the petition or an amendment to the petition was untimely filed.[2] Relying on Rule 60(b) of the Federal Rules of Civil Procedure and the Court's inherent equitable authority, plaintiffs ask the Court to order that these petitions be processed for consideration by the Monitor. For the reasons stated below, the Court denies plaintiffs' motion.

1. Plaintiffs initially brought this issue before the Court in their December 11, 2001 "Motion for Relief on Behalf of 97 Class Members Whose Petitions for Monitor Review Were Filed on or Before September 15, 2001, but Have Been Designated by the Facilitator as Late" (under seal) (hereinafter "Pl. December 11, 2001 Motion"). Because plaintiffs subsequently learned that additional late petitions were at issue, plaintiffs withdrew their first motion and ultimately filed the instant motion for relief on July 19, 2002. *See* Plaintiffs' Motion for Relief for Four Groups of Claimants Who Filed Petitions for Monitor Review at 2 ("Pl.Motion"). Among the claimants included in plaintiff's December 11, 2001 motion and not included in the instant motion are approximately 10 whose deadlines were missed as a result of confusion caused by Facilitator error. Specifically, when printing duplicate copies of Adjudicator decisions for farmers or their attorneys, the Facilitator mistakenly marked the decisions with the date on which they were printed, rather than the date on which the decision originally issued, thus misleading the claimant or attorney in his or her calculation of the petition deadline. *See*

### I. BACKGROUND

#### *A. Petitions for Monitor Review*

By Stipulation and Order of July 14, 2000, the parties agreed to deadlines for the submission of all petitions for Monitor review of Track A Adjudicator decisions, and the Court endorsed this agreement.[3] Under that Stipulation and Order, for claimants who received a decision before July 14, 2000 the deadline for filing a petition was 120 days from the date of the Order, that is November 13, 2000. For those claimants who received an Adjudicator decision after July 14, 2000, the deadline was 120 days after the date of the decision. *See* Stipulation and Order of July 14, 2000 at ¶5 ("Stip. and Order").

Subsequent to the entry of these deadlines, the Court issued a series of orders that created a "Register" process, through which plaintiffs' counsel provided the government with the names of all those claimants to whom the November 13, 2000

Pl. December 11, 2001 Motion at 11. Based on the government's agreement to allow these petitions to be processed as timely, the Court considers this issue to be conceded by the government and considers the concession applicable to any and all claimants whose deadlines were missed for the same reason.

2. In the instant motion, plaintiffs originally sought relief for a total of 387 claimants. In subsequent briefing, however, the parties reached an agreement with respect to 37 of these claimants, reducing the total to 350 claimants. *See* Defendant's Opposition to Plaintiffs' Motion for Relief for Four Groups of Claimants Who Filed Petitions for Monitor Review at 9 ("Def.Opp."); Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Relief for Four Groups of Claimants Who Filed Petitions for Monitor Review at 2–3 ("Pl.Reply").

3. Although the Stipulation and Order applied to both Track A (Adjudicator) and Track B (Arbitrator) decisions, plaintiffs' motion and this Opinion deal only with the former.

deadline applied and on whose behalf they intended to file petitions. For reasons explained in these subsequent Orders, the Court effectively extended the November 13, 2000 deadline for the filing of petitions to May 15, 2001 and subsequently to September 15, 2001. The Court, however, did not alter the deadlines to petition for Monitor review for claimants who received an Adjudicator decision after July 14, 2000 or for those who had received a decision before July 14, 2000 but whose names had not been placed on the Register. *See* Order of November 8, 2000; Memorandum Opinion and Order of May 15, 2001; *see also* Monitor's Report on Late Petition Filings, February 28, 2002 at 3 ("Monitor Report"). Accordingly, most claimant petitions for Monitor review were due on September 15, 2001, and the vast majority of these were timely filed. *See* Monitor Report at ¶ 5; Pl. Motion at 3. Of the thousands of petitions that were filed on behalf of claimants, both pursuant to the Register and otherwise, plaintiffs' motion pertains to the 350 petitions (less than 1.8% of all Track A claimants) that currently are not being processed for consideration. *See* Pl. Reply at 3.

### B. Plaintiffs' Motion for Relief

Plaintiffs address their motion to four groups of claimants, describing the specific circumstances that justify relief for each group. Although plaintiffs further divide these groups into subcategories and provide individual detail with respect to each of the 350 affected claimants, the motion is devoted primarily to two circumstances that plaintiffs suggest justify relief: (1) mistakes made by class counsel, of counsel, *pro bono* counsel or unaffiliated attorneys, largely owing to the high volume of petitions and/or the short period of time within which class counsel had to compile the initial Register; and (2) inadequate notice to *pro se* farmers and unaffiliated attorneys regarding the 120–day deadline for petitions for Monitor review.[4] With an eye to these two circumstances, the Court turns to the question of legal support for the requested relief.

## II. DISCUSSION

### A. Sources of Authority

Plaintiffs argue that the Court has authority to direct the Facilitator to process the 350 petitions for Monitor review despite the Facilitator's determination that either the petition or a supplement to the petition was untimely filed. In support of this position, plaintiffs rely on Rule 60(b) of the Federal Rules of Civil Procedure, which permits a court to interpret and modify its orders, and on the Court's inherent equitable authority to modify its decrees.

With respect to the first ground, plaintiffs argue that because the petition deadlines were established by the Court's Stipulation and Order of July 14, 2000 and effectively extended by its Orders of November 8, 2000 and May 13, 2001, Rule 60(b) gives the Court discretion to "interpret" its prior orders so as to deem these 350 petitions timely. *See* Pl. Motion at 33. Alternatively, plaintiffs suggest that the Court may modify its prior orders under Rule 60(b) to allow at least some of the petitions at issue to be treated as exceptions to the deadlines. *See id.*

With respect to the Court's inherent equitable authority, plaintiffs argue that it is "in the interests of justice to designate these petitions as timely filed," based on "unforeseeable errors" made by the Facili-

---

**4.** To the extent that certain claimants included in plaintiffs' motion do not fit into either of these categories, the Court will address those circumstances and arguments for relief separately.

tator, attorneys and possibly the Monitor, as well as "inevitable" logistical problems resulting from the "practical realities" of representing so many claimants in the petition process. *See* Pl. Motion at 34–36. In essence, plaintiffs ask the Court to set aside the framework of deadlines established by the parties' stipulation and the Court's prior orders "in recognition of the inequity that will result" and the extreme hardship that claimants will suffer if the deadlines that have been established now are enforced. *See id.* at 35–36.

Defendant opposes plaintiffs' motion on the grounds that the requested relief can be achieved only through modification of the Court's prior orders and that such modification is not justified in these circumstances. Specifically, defendant argues that plaintiffs have not satisfied the legal standard for modification and that the Court therefore lacks authority to order that these petitions be processed for consideration. As for the Court's inherent equitable authority, defendant argues that the standard is essentially the same regardless of whether the Court analyzes the question under Rule 60(b) of the Federal Rules of Civil Procedure or under general equitable principles. *See* Def. Opp. at 6.

Upon review of the parties' arguments, the relevant law and the entire record in this case, the Court concludes as a threshold matter that the requested relief cannot be granted without modification of the Court's previous orders; to declare these petitions timely cannot reasonably be seen as mere "interpretation." The Court therefore turns to the legal standard for modification, as expressed in Rule 60(b) itself and the applicable case law.

### B. Legal Standard for Modification

 Rule 60(b) of the Federal Rules of Civil Procedure provides that "upon such terms as are just, the court may relieve a party or a party's legal represen-

tative from a final judgment, order, or proceeding [where] ... it is no longer equitable that the judgment should have prospective application; or ... [for] any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). To demonstrate that it is "no longer equitable" under Rule 60(b)(5) for the petition deadlines to be given effect, plaintiffs have the burden of identifying a "significant change in circumstances" that justifies modification. *See Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 383, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). Such changed circumstances may include "unforeseen obstacles" that make a decree or order "unworkable." *Id.* at 384; *see also Pigford v. Veneman,* 292 F.3d 918, 925 (D.C.Cir.2002); *Pigford v. Glickman,* 127 F.Supp.2d 35, 38 (D.D.C.2001). Moreover, Rule 60(b)(5) "is not to be read without emphasis on the important words 'no longer'; assuming that the propriety of the injunction as issued has passed beyond debate, it refers to some change in conditions that makes continued enforcement inequitable." *Laffey v. Northwest Airlines, Inc.,* 642 F.2d 578, 583, n. 44 (D.C.Cir.1980) (quoting *Schildhaus v. Moe,* 335 F.2d 529, 530 (2nd Cir.1964)). Similarly, to justify modification of an order under a court's general equitable authority, a party also must demonstrate a "significant change in the circumstances obtaining at the time the [order] was entered." *Environmental Defense Fund, Inc. v. Costle,* 636 F.2d 1229, 1240 (D.C.Cir.1980).

Upon close consideration of the specific circumstances described in plaintiffs' motion and attached exhibits, the Court concludes that modification of its prior orders is not justified. With respect to each of plaintiffs' two main arguments for relief—the high volume of petitions and inadequate notice of deadlines—the Court finds that the facts presented do not constitute

"changed circumstances" sufficient to justify modification of the Court's prior orders either under Rule 60(b) or under the Court's equitable authority. With respect to the unique circumstances of certain individuals falling outside these two main categories, the Court also finds that modification is not justified.

### C. Changed Circumstances

Plaintiffs present two main theories of changed circumstances in support of their request for modification: (1) attorney error resulting from the high volume of petitions; and (2) inadequate notice of the 120–day deadline. The Court examines each theory under the standard articulated above.

### 1. Attorney Errors Due to High Volume

For approximately 114 of the late petitions at issue—including most in Group One, who filed untimely petitions, and most in Group Four, who filed timely petitions but untimely supplements—plaintiffs admit that the lateness resulted from attorney error. See Pl. Motion at 6, 26.[5] Notwithstanding this admission, plaintiffs argue that the attorney error was an unavoidable result of the large volume of claimants requesting assistance with petitions during a short period of time. See Pl. Motion at 35. Because the number of petitioners in this case increased so far beyond original estimates, plaintiffs reason, attorney errors in the petition process were not "careless" but rather an inevitable byproduct of lawyers having to handle so many cases under a system set up with far fewer participants in mind. See Pl. Reply at 4–5, 7, 10. Plaintiffs assert that this explosion in volume is "[t]he predominant change in circumstance" that justifies modification of the Court's prior orders. Id. at 5.

■ The fundamental flaw in this reasoning is that the critical "changed circumstance" on which plaintiffs rely occurred before, not after, the relevant deadlines were agreed to by the parties and endorsed by the Court. The exponential increase in claimants was fully apparent when plaintiffs and defendant negotiated and agreed to the July 14, 2000 Stipulation and Order, including its clear provision that "no extensions of these deadlines will be granted for any reason." Stip. and Order at ¶ 4. Plaintiffs' burden in assisting thousands of claimants while adhering to these negotiated deadlines thus was entirely foreseeable and does not constitute a change in circumstance. Accordingly, the Court must find that plaintiffs have failed to carry their burden of demonstrating that the factual circumstances have

---

5. Plaintiffs suggest that in 13 of the cases in Group Four, the untimely submissions were intended as supplements to timely petitions and that some claimants and attorneys understood such supplements to be permissible. See Pl. Motion at 26. In support, plaintiffs note that supplements to timely petitions are not discussed in the Consent Decree and attach the statement of one attorney who submitted four such late supplements based on her understanding that the Monitor's Office would accept late supplements under certain conditions. See Pl. Motion, Exhibit H, Statement of Diane Cooley. Despite Ms. Cooley's statements, the Court agrees with defendant that claimants and their attorneys "could not legitimately have been confused about whether supplemental filings would be accepted." Def. Opp. at 10. The possibility of late supplements to timely petitions was expressly rejected by the Court in a prior order, on the ground that to allow such filings would permit "an indefinite extension of time so that [class counsel] can complete what should have been complete six months ago." Memorandum Opinion and Order of April 27, 2001 at 4; see also Office of the Monitor, Questions and Answers About Monitor Review of Decisions, at Q.14, available at: www.pigfordmonitor.org/class/200206qa.htm (June 2002) ("No Petitions or additional Petition information can be submitted after your deadline has passed.").

changed in a way that would justify a modification of the July 14 Stipulation and Order. *See Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. at 383–84, 112 S.Ct. 748 (ordinarily modification should not be granted where the moving party relies upon events that were actually known or anticipated at the time of the original order); *see also Laffey v. Northwest Airlines, Inc.,* 642 F.2d at 583, n. 44.[6]

### 2. Inadequate Notice

The majority of late petitions at issue—208 of the 350, according to plaintiffs' motion—were late not because of error by class counsel, of counsel or *pro bono* counsel but because claimants or their unaffiliated attorneys received inadequate notice of the 120-day deadline. *See* Pl. Reply at 9. Specifically, plaintiffs claim that the decision letters mailed to claimants after July 14, 2000 "mistakenly omitted language informing claimants that they had 120 days from the date of the decision to petition the Monitor for review." Pl. Motion at 14–15. Plaintiffs characterize this omission as "an honest mistake" resulting from miscommunications among the parties, Pl. Reply at 9, and explain that "[b]ased on the July 14, 2000 Stipulation and Order, by July 27, 2000, the parties, Facilitator, and Arbitrator had agreed upon modified language for Track A and Track B decisions." Pl. Motion at 15, n.5. Defendant objects to this characterization, asserting that "neither the parties nor the Facilitator ever intended to include such language [regarding the 120-day deadline] in adverse decision letters" but only in letters informing claimants of favorable decisions. Def. Opp. at 8. Moreover, defendant notes that the Stipulation and Order itself did not require any language regarding the deadline to be included in letters to claimants. Because this form of notice was not contemplated by the Court or the parties at the time that the deadlines were established by Stipulation and Court Order, defendant argues, the fact that such notice was not given does not constitute changed circumstances. *See id.*

■ Although it is unclear from the record precisely what reference to the deadline, if any, the parties intended to include in decision letters, the Court concludes that the actual omission of such notice to many claimants does not justify modification of the Court's prior orders. Whatever the reasons for the omission of language regarding the deadline from decision letters, it is evident that the July 14 Stipulation and Order establishing the 120-day deadline did not require such language. *See* Stip. and Order at ¶¶ 5, 7. The Stipulation and Order required two forms of notice: "Copies of this Stipulation and Order shall be (a) posted in a conspicuous public place in every USDA Farm Services Agency county office; and (b) mailed by the Facilitator to every person who (i) requested a Claim Sheet and Election Form and (ii) did not submit a completed Claim Form to the Facilitator within the period prescribed by ¶ 5(c) of the Consent Decree." Stip. and Order at ¶ 7.[7] At the

---

**6.** With respect to those claimants who filed timely petitions but whose files contain additional documents that were untimely filed (all but one of the claimants included in Group Four of plaintiffs' motion), the Facilitator should forward all timely-filed portions of the files to the Monitor since these portions are properly eligible for Monitor consideration, while all portions deemed untimely by the Facilitator should not be forwarded.

**7.** This mailing of the Stipulation and Order thus targeted people who were likely to be affected by provisions of the Order other than the 120-day deadline. *See* Monitor's Report to the Court Regarding Notice to the Class of the 120-Day Deadline to File a Petition For Monitor Review, May 30, 2003 at 3 ("Monitor's Notice Report"). As the Monitor has noted, "few people eligible to file a petition with the Monitor would have received direct

time that the Stipulation and Order was entered, therefore, it was clear to both parties and to the Court that the Order did not require individual notice to unsuccessful Track A claimants. *See id.;* Monitor's Notice Report at 3; *see also United States v. Western Electric Co., Inc.,* 154 F.R.D. 1, 7, n. 16 (D.D.C.1994), *aff'd,* 46 F.3d 1198 (D.C.Cir.1995) ("[T]he scope of a consent decree [or stipulated court order] must be discerned within its four corners, and not by reference to what might satisfy the purpose of one of the parties to it .... [T]he instrument must be construed as it is written, and not as it might have been written." (quoting *United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)). Accordingly, the absence of individual notice does not create a situation where "changed factual conditions make compliance with the [order] substantially more onerous." *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. at 384. For these reasons, the Court cannot grant the requested relief on this ground.

### 3. Unique Circumstances

Finally, plaintiffs assert that the Court should grant relief to 13 claimants who present unique circumstances. Plaintiffs' argument fails with respect to these claimants as well.

The first group described by plaintiffs as presenting "special circumstances" is the Carpenter family. Within this group of claimants are five individuals and a farming business, all of whom requested assistance from class counsel in filing petitions for Monitor review but only one of whom was included on the Register. *See* Pl. Motion at 6. Upon review of the information in plaintiffs' motion and attached exhibits relating to each of the Carpenter claimants, the Court finds that the circum-

stances surrounding these late petitions are not "unique" but the same as those surrounding the claimants in Group One of plaintiffs' motion—namely, attorney error. As stated in plaintiffs' exhibits, the situation underlying each of the Carpenters' requests for relief is simple: "This claim was eligible for the Register but was mistakenly omitted." *See* Pl. Motion, Exh. D, Nos. 92–96 (under seal).While plaintiffs attribute the omission of five out of the six Carpenter claimants to a cause other than the high volume of petitions—the fact that all correspondence relating to the claim of any Carpenter was faxed to class counsel under a uniform cover sheet from Carpenter's Produce, which class counsel mistook for correspondence from only one member of the family, whose name was the only one placed on the Register—the omission reflects a circumstance presented by many other claimants in plaintiffs' motion: attorney error. Accordingly, the Court's preceding analysis of petitions untimely filed as a result of attorney error applies to the Carpenters' petitions as well, and the request for relief on their behalf is denied. *See supra* § II.C.1.

Plaintiffs also seek relief on behalf of six claimants who did not submit petitions for Monitor review but submitted letters requesting Monitor assistance, which the Facilitator treated as petitions for Monitor review. *See* Pl. Motion at 6, 22–23, 25. While there are no deadlines that apply to requests for Monitor assistance, the Facilitator treated these letters as petitions and thus deemed them untimely because they were filed beyond the 120–day deadline. Plaintiffs seek relief for these claimants "in the event that the Court determines that [the letters are] more appropriately considered by the Monitor as petition[s]." Pl. Motion at 22–23. Plaintiffs' motion is

notice of the 120–day deadline from this mail- ing." *Id.*

not entirely clear as to what relief is sought for these claimants, but it appears that plaintiffs are asking the Court *either* to reverse the Facilitator's decision to designate these letters as petitions for Monitor review and permit them to be forwarded to the Monitor for her assistance *or* to uphold the designation of the submissions as late petitions but nonetheless allow them to be processed as petitions for Monitor review in spite of their untimely filing.

In view of the foregoing discussion, the Court will not disturb the Facilitator's determination that these letters should not be forwarded to the Monitor as petitions for Monitor review. If these requests for assistance concern matters properly outside of the Monitor's petition process, however, the letters should be forwarded to the Monitor for her resolution, pursuant to her authority under Paragraph 12(b)(ii) of the Consent Decree. Moreover, claimants may seek assistance on such matters directly from the Monitor's Office at any time, using the process outlined in the Order of Reference and detailed on the Monitor's website: *www.pigfordmonitor.org.* To the extent that plaintiffs ask the Court to grant relief for these six claimants by modifying the prior orders that established the relevant deadlines, the Court finds no basis for such modification, as explained above. *See supra* § II.C.

Another unique circumstance presented in plaintiffs' motion is the case of one claimant whose submission was not a petition for Monitor review but a request for reconsideration of the Monitor's prior decision to deny his petition for Monitor review. *See* Pl. Motion at § II.D.3(a)(5). It is unclear from the record why the Facilitator designated this submission as a late petition, given the fact that claimants are allowed only one lifetime petition for Monitor review and this claimant already had filed one. *See* Stip. and Order at ¶ 6.

Moreover, the Monitor has implemented a process for reconsideration of her decisions on petitions for Monitor review. *See www.pigfordmonitor.org/reconpol.htm.* This claimant's submission appears to be a request for such reconsideration. In light of the Monitor's established process for reconsideration, and the fact that this submission could not be a late petition, the Facilitator should redesignate this submission and forward it to the Monitor. Alternatively, the claimant may wish to submit the request for reconsideration of the Monitor's prior decision directly to the Office of the Monitor. The Court is not the appropriate authority for reviewing the Facilitator's decision.

Finally, plaintiffs seek relief for one claimant who was incarcerated at the time that the 120–day deadline passed. *See* Pl. Motion at 6. In support of relief for this claimant, plaintiffs rely on D.C.Code Section 12–302(a)(3), which provides that the applicable limitations period for filing civil actions is tolled during an individual's incarceration. *See Proctor v. Morrissey,* 979 F.Supp. 29, 32 (D.D.C.1997) (citing *Brown v. Jonz,* 572 A.2d 455, 457, n. 7 (D.C.1990)). It is unclear from the record precisely when this claimant's incarceration began and ended, and it therefore is unclear whether this petition would be timely if viewed in light of that circumstance. This claimant may wish to seek reconsideration from the Facilitator itself, which may reverse its decision in light of the alleged incarceration, the relevant case law and the potential tolling of the 120–day deadline.

### D. Consent Decree, Prejudice to Defendant and Waiver

In addition to the argument that changed circumstances justify the requested relief, plaintiffs present several other rationales in support of their motion. First, plaintiffs argue that the requested

relief is consistent with and supported by the remedial purposes of the Consent Decree, which, they assert, apply equally to these petitions because the Consent Decree was the basis for the Court's Stipulation and Order of July 14, 2000 and its subsequent orders. *See* Pl. Motion at 36–38; Pl. Reply at 11. The Court cannot agree. While plaintiffs are correct that "without the Consent Decree, the petition process does not exist," Pl. Reply at 11, this statement gets them nowhere. It is precisely because the Consent Decree did *not* contain deadlines for petitions for Monitor review that the parties negotiated the July 14, 2000 Stipulation and Order and the Court endorsed the agreement of the parties. It therefore is implausible to read the July 14 Order as somehow flowing from and subject to the interpretive principles of the Consent Decree. Certainly the Consent Decree's remedial purpose cannot justify modification of the Court's subsequent orders where such modification is otherwise impermissible.

Plaintiffs next suggest that the Court should grant the requested relief because the defendant will not be substantially prejudiced. The Court finds this argument equally unavailing. It is beyond question that further financial obligation would constitute prejudice to defendant, and that is precisely what plaintiffs seek through their motion. As the parties point out, the government already has paid out over $800 million as a result of this settlement, Pl. Reply at 2, and defendant will "be prejudiced to the tune of almost one million dollars" if the Court permits consideration of the late petitions and if even five percent of them are successful. Def. Opp. at 11. Accordingly, the Court perceives no absence of prejudice to support plaintiffs' motion.

Plaintiffs also argue that defendant has waived her right to object to plaintiffs' motion because she has "repeatedly avoided strict application of the petition deadlines throughout this petition process." Pl. Motion at 38. As examples of the extensions that constitute defendant's waiver, plaintiffs cite repeated requests by defendant that the Facilitator either slow or delay the routing of petitions to defendant for response, as well as defendant's request to the Court for an extension of time to respond to a number of petitions in May and June of 2002. *See id.* at 39. Plaintiffs also assert that defendant filed a number of petitions for Monitor review out of time and will have to seek relief from the Court, but provide no further specifics on this claim.

 The Court concludes that defendant has not waived the right to object to plaintiffs' motion. In contrast to plaintiffs' request for relief, defendant's repeated requests of the Facilitator did not require the modification of any Court order. Neither the July 14, 2000 Stipulation and Order nor the September 12, 2000 Stipulation and Order (which extended the time for party responses to petitions to 60 days and set a maximum of 125 petitions per week to be routed by the Facilitator to the Monitor and to the parties) provided a minimum number of petitions that must be routed to defendant each week. Furthermore, defendant's requests that this Court extend the time for response to already routed petitions in May and June of 2002 arose from an incident of mass flooding at defendant's offices that destroyed several computers. *See* Def. Opp. at 14. Such an unforeseeable disaster is qualitatively different from the circumstances described by plaintiff and thus does not constitute a waiver of defendant's right to object.

In sum, plaintiffs ask the Court to modify its prior orders to allow the processing of 350 petitions deemed late by the Facilitator. Upon close review of the parties'

arguments and the record, the Court concludes that plaintiffs have failed to demonstrate changed circumstances sufficient to justify modification either under Rule 60(b) of the Federal Rules of Civil Procedure or under the Court's inherent equitable powers. Accordingly, it is hereby

ORDERED that plaintiffs' motion for relief [639] is DENIED with respect to all 350 claimants.

SO ORDERED.