Timothy **PIGFORD**, et al., Plaintiffs,

v.

Ann **VENEMAN**, Secretary, United States Department of Agriculture, Defendant.

Cecil **Brewington**, et al., Plaintiffs,

v.

Ann Veneman, Secretary, United States Department of Agriculture, Defendant.

Nos. CIV.A.97–1978(PLF), CIV.A.98–1693(PLF).

United States District Court, District of Columbia.

March 10, 2004.

---

13. An order consistent with the Court's ruling accompanies this opinion.

Alexander John Pires, Jr., Conlon, Frantz, Phelan & Pires, Washington, DC, Anthony Herman, Covington & Burling, Washington, DC, David A. Branch, Law Office of David A. Branch, Washington, DC, Jacob A. Stein, Stein, Mitchell & Mezines, Washington, DC, Richard Talbot Seymour, Lieff, Cabraser, Heimann & Bernstein, LLP, Washington, DC, J. L. Chestnut, Jr., Chestnut, Sanders, Sanders, Pettaway, Campbell & Albright, Selma, AL, Mona Lyons, Clifford, Lyons & Garde, Caroline Lewis Wolverton, Washington, DC, Stephon J. Bowens, North Carolina Association of Black Lawyers, Marcus B. Jimison, Durham, NC Phillip L. Fraas, Hogan & Hartson, Washington, DC, for Plaintiffs.

Elizabeth Goitein, Michael Sitcov, Terry M. Henry, Marsha Stelson Edney, U.S. Department of Justice, Washington, DC, for Defendants.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

The Court has before it two motions for reconsideration of the Court's June 2, 2003

Opinion and Order denying plaintiffs' motion for relief for four groups of claimants who filed petitions for Monitor review. Upon consideration of plaintiffs' motions, defendant's response, plaintiffs' reply and defendant's surreply, the Court concludes that both motions for reconsideration must be denied.

## I. BACKGROUND

On April 14, 1999, this Court approved and entered a Consent Decree in these consolidated actions that was designed to bring resolution and finality to the claims of race discrimination of those class members who opted to have their claims resolved under the adjudication or arbitration processes provided in the Consent Decree. *See Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C.1999), *aff'd*, 206 F.3d 1212 (D.C.Cir.2000). The Consent Decree provided that the Court would appoint an independent Monitor and that the Monitor would have the authority to direct the facilitator, adjudicator, or arbitrator to re-examine a claim if the Monitor determined that a "clear and manifest error" had occurred and had resulted in, or was likely to result in, a "fundamental miscarriage of justice." Consent Decree ¶ 12(b)(iii). The Consent Decree did not provide a time limit within which a claimant could petition for Monitor review of his or her claim. *See id.*

To bring finality to the proceedings under the Consent Decree, the parties stipulated on July 14, 2000, that any claimant who had already received an adverse decision from the Adjudicator would have 120 days from the date of the Order, until November 13, 2000, to file a petition for Monitor review. *See* July 14, 2000 Stipulation and Order ("Stipulation and Order") at 4.[1] They further stipulated that all

1. Although the Stipulation and Order applied to both Track A (Adjudicator) and Track B (Arbitrator) decisions, plaintiffs' motions and this Opinion deal only with the former.

claimants who were to receive adjudication decisions after July 14, 2000 would have 120 days from the date of their adverse decision to file a petition for Monitor review. *See id.* The Stipulation and Order specifically provided that "[n]o extensions of these deadlines will be granted for any reason." *Id.* The Court approved this agreement. *See id.*[2]

The Court provided in a later Order that instead of filing fully supported petitions for Monitor review, counsel could instead submit a Register of Petitions that would list all claimants who received a decision prior to the July 14, 2000 Stipulation and Order and had asked counsel to provide assistance with the filing of his or her petition for Monitor review. *See Pigford v. Veneman,* No. 97–1978, 2000 U.S. Dist. LEXIS 16374, *9 (D.D.C. Nov. 8, 2000). The Court entered this Order, permitting such an abbreviated process, in order "to ensure that claimants would not bear the burden of counsel's inability to process Petitions at a rate sufficient to meet the November 13 deadline" agreed to in the July 14 Stipulation. *Id.* at *6. The November 8 Order laid out a time frame for filing fully supported petitions and provided that all supporting materials had to be filed no later than May 15, 2001. *See id.* at *9–11. On May 15, 2001, the Court reluctantly changed the deadline for filing supporting materials and withdrawals, setting a final deadline of September 15, 2001 to complete the petition process. *See Pigford v. Veneman,* 143 F.Supp.2d 28, 31 (D.D.C. 2001).

The Register process discussed above did not apply to claimants receiving a decision from the Adjudicator after July 14, 2000; these claimants' petitions therefore were untimely if they were filed more than 120 days after the Adjudicator's decision. *See Pigford v. Veneman,* 143 F.Supp.2d at 31. The deadline was never modified as to claimants who received their Adjudicator decisions after July 14, 2000.

The Register process also did not apply to claimants who received their adverse Adjudicator decisions before July 14, 2000, but whose names were not placed on the Register. Petitions for individuals in this situation therefore were untimely if they were not filed by the original November 13, 2000 deadline set by the Stipulation and Order. *See Pigford v. Veneman,* No. 97–1978, 2000 U.S. Dist. LEXIS 16374 at *9.

Several hundred petitions fitting into these two excluded categories, as well as those of a few other claimants with more unique circumstances, were declared untimely by the Facilitator because they were submitted after the deadlines set by the Stipulation and Order. Plaintiffs moved the Court to direct the Facilitator to process these petitions despite their untimely nature. *See* Plaintiff' Motion for Four Groups of Claimants Who Filed Petitions for Monitor Review. On June 2, 2003, the Court issued an Opinion and Order denying relief for a total of 350 individual claimants whose petitions for Monitor review had been deemed untimely. *See Pigford v. Veneman,* 265 F.Supp.2d 41 (D.D.C.2003).

## II. DISCUSSION

Plaintiffs' original motion for relief argued that the Court could interpret and modify the Orders imposing the deadlines under Rule 60(b) of the Federal Rules of

---

**2.** On behalf of plaintiffs, the stipulation was signed by class counsel, Alexander Pires and Phillip L. Fraas. Also listed were of counsel: J.L. Chestnut; Othello Cross; Willie Smith; Gerald R. Lear and Hubbard I. Sanders, IV.

*See* Stipulation and Order. On December 22, 2000, the Court issued an Order amending the Consent Decree to include J.L. Chestnut as class counsel. *See* December 22, 2000 Order.

Civil Procedure or exercise its inherent equitable authority to modify the decrees. *See* Plaintiffs' Motion for Relief for Four Groups of Claimants Who Filed Petitions for Monitor Review at 32–36. The Court determined, however, that since the requested relief could not be granted without modification of the Court's previous orders, allowing the petitions to be filed could not be viewed as mere "interpretation." *Pigford v. Veneman,* 265 F.Supp.2d at 45. The Court therefore determined that the motion for relief would be governed by the legal standard for modification. *See id.*[3]

Rule 60(b) of the Federal Rules of Civil Procedure provides in pertinent part that "upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding [where] ... [5] it is no longer equitable that the judgment should have prospective application; or ... [6][for] any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). For a judgment to no longer be equitable, plaintiffs must identify a "significant change in circumstances" justifying modification. *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 383, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). This Court concluded in its earlier Opinion that the circumstances described by plain-

tiffs (attorney error due to the high volume of petitions and inadequate notice of the 120–day deadline) did not warrant modification of the Court's previous Orders. *See Pigford v. Veneman,* 265 F.Supp.2d at 46–50. The Court noted that the high volume of petitions was apparent at the time the Stipulation was negotiated by counsel for the parties and approved by the Court; accordingly, there were no changed circumstances based on attorney error. *See id.* at 46–48. Similarly, the Court held that the Stipulation and Order did not require language regarding the 120–day deadline to be included in the Track A and Track B decisions of the Adjudicator and Arbitrator and that the absence of such language also did not constitute changed circumstances. *See id.* at 47–49. The Court also found that various unique situations presented by a handful of other claimants did not warrant relief from the Court. *See id.* at 49–50. The Court concluded that plaintiffs had "failed to demonstrate changed circumstances sufficient to justify modification either under Rule 60(b) or the Court's inherent equitable powers" and denied plaintiffs' motion for relief. *Id.* at 51. Plaintiffs now ask the Court to reconsider that decision.

Plaintiffs have filed two separate motions for reconsideration of the Court's June 2, 2003 Opinion and Order.[4] Because

---

**3.** On June 21, 2002, the United States Court of Appeals had reversed an earlier decision of this Court "interpreting" another provision of the Consent Decree. *See Pigford v. Veneman,* 292 F.3d 918 (D.C.Cir.2002). The Court of Appeals held that "the district court's interpretive and enforcement authority depends on the terms of the decree and related court order, rather than on some 'ancillary' or 'inherent' power." *Id.* at 925. "To now hold that the district court, through either some 'ancillary' authority to enforce the decree absent a violation or 'inherent' authority to interpret it, may permit extensions of Track B deadlines would not only deny the Department [of Agriculture] the benefit of its bar-

gain, but would also discourage settlements." *Id.* This Court is bound by the holding of the Court of Appeals and must apply the principles announced by the Court of Appeals in resolving issues under the Consent Decree.

**4.** Conlon, Frantz, Phelan & Pires, LLP filed a motion for reconsideration of the Court's Order of June 2, 2003 ("Conlon motion") on June 16, 2003, which was joined by J.L. Chestnut, Jr. on July 9, 2003. Chestnut, Sanders, Sanders, Pettaway & Campbell, LLC also submitted a motion for reconsideration of the Court's Order on June 16, 2003 ("Chestnut motion").

both raise similar issues, they will be dealt with together.

### A. Rule 60(b)

Plaintiffs repeat their previous arguments that the Court should grant relief under Rule 60(b) of the Federal Rules of Civil Procedure. *See* Conlon Motion at 6–18; Chestnut Motion at 9–21. Arguments are made both under Rule 60(b)(5), which was discussed at length in the Court's June 2, 2003 Opinion and Order, and Rule 60(b)(6). As an initial matter, the Court declines to revisit its determination that the asserted "changed circumstances" presented by plaintiffs do not justify modification of the Court's prior orders under Rule 60(b)(5). The Court is well aware of the circumstances surrounding these petitions and further elaboration does not change this Court's opinion that plaintiffs have not demonstrated changed circumstances sufficient to justify modification of the Court's Orders under Rule 60(b)(5).

Plaintiffs also urge the Court to exercise its discretion to grant relief to the claimants under Rule 60(b)(6), which provides that relief may be granted for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6); *see* Chestnut Motion at 13; Conlon Motion at 6. Although both parties represent this as a "new" argument, the language of Rule 60(b)(6) was included both in plaintiffs' initial motion for relief and in the Court's Opinion. *See Pigford v. Veneman,* 265 F.Supp.2d at 45; Plaintiffs' Motion for Relief for Four Groups of Claimants Who Filed Petitions for Monitor Review at 33. Although the Court explicitly analyzed plaintiffs' request under Rule 60(b)(5), this does not mean that it was unaware of Rule 60(b)(6). *See Pigford v. Veneman,* 265 F.Supp.2d at 45.

■ Relief under Rule 60(b)(6) is reserved for "extraordinary circumstances." *Goland v. CIA,* 607 F.2d 339, 372–73 (D.C.Cir.1978); *see also Liljeberg v.*

*Health Services Acquisition Corp.,* 486 U.S. 847, 864 n. 10, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). Relief under Rule 60(b)(6) is not available "unless the other clauses, (1) through (5), are inapplicable." *Goland v. CIA,* 607 F.2d at 372–73; *see also Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. at 864 n. 10, 108 S.Ct. 2194 ("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive"). "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)." 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 60.48[2] (3d ed.2002).

■ The Court concluded in its June 2, 2003 Opinion and Order that the "specific circumstances" described in plaintiffs' motion and attached exhibits did not justify the modification of its Orders. *Pigford v. Veneman,* 265 F.Supp.2d at 45. In analyzing plaintiffs' request under Rule 60(b)(5), the Court obviously concluded that Rule 60(b)(5) was applicable but that plaintiffs had not satisfied the requirements of that subsection of the Rule. Under the established principle that Rule 60(b)(6) is not available where another subsection of Rule 60(b) provides the proper analytical framework for consideration, plaintiffs cannot obtain relief under Rule 60(b)(6) merely because they have failed to satisfy the strictures of Rule 60(b)(5). *See* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 60.48[2] (3d ed. 2002) ("The provision applies only when there are reasons for relief *other* than those set out in the more specific clauses of Rule 60(b). To read the provision any other way would eliminate the need for the specific provisions and would eliminate the limitations that are imposed on those specific provisions.") Even were analysis appropriate

under Rule 60(b)(6), the Court finds that the "extraordinary circumstances" required for relief are not present here. The Court therefore declines to disturb its ruling declining to grant relief under Rule 60(b).

The Chestnut motion offers the additional argument that the Stipulation and Order itself was a change in circumstances because the Chestnut firm, which was still Of Counsel at the time of the Stipulation, was not involved in the decision to negotiate and agree to the deadlines imposed by the Stipulation. Although the cases cited by the Chestnut motion deal specifically with the negotiation of settlement agreements, the courts of appeals do acknowledge that lead counsel have the responsibility to keep other counsel apprised of negotiations and to consult with them about settlement terms. *See In Re Ivan F. Boesky Securities Litigation,* 948 F.2d 1358, 1365 (2d. Cir.1991); *In Re General Motors Corporation Engine Interchange Litigation,* 594 F.2d 1106, 1124–33 (7th Cir.1979). The Court properly assumed that the Chestnut firm was aware of the Stipulation by the time it was approved by the Court.

■ As the government points out, the Stipulation and Order contained a provision stating that, "[a]ny person who objects to any aspect of this Stipulation and Order shall submit his/her objections to the Court in writing not later than 30 days from the date of the entry of this Order." Stipulation and Order at 5. Notwithstanding the Chestnut motion's assertion that it entered a "verbal objection" with the Court—further support that it knew of the existence of the Stipulation and Order—the firm failed to file any written objection to the Stipulation and Order as was required by its clear language. Although it is true that all counsel should be involved to the extent practicable in the negotiation process, "knowledge and extended silence might easily support a finding of implied consent or estoppel." *In Re Boesky,* 948 F.2d at 1367.

Regardless of the circumstances surrounding the negotiation of the Stipulation, the Court is unconvinced by the argument that the adoption of the Stipulation and Order can constitute "changed circumstances" that would justify modification of the Stipulation and Order itself. As the Court explained in denying relief on the grounds asserted in plaintiffs' original motion for relief, "the fundamental flaw in this reasoning is that the critical 'changed circumstance' on which plaintiffs rely occurred *before,* not after, the relevant deadlines were agreed to by the parties and endorsed by the Court." *Pigford v. Veneman,* 265 F.Supp.2d at 46. If the Chestnut firm objected to the deadlines imposed by the Stipulation and Order, its proper course of action was to file its objections with the Court at the time the Stipulation and Order was adopted by the Court or within 30 days thereafter, not to later seek relief under Rule 60(b).

## B. Finality of July 14, 2000 Stipulation and Order

■ Plaintiffs suggest for the first time in their motion for reconsideration that the Court has the power to modify the Stipulation and Order because the Order was interlocutory, not final. *See* Conlon Motion at 2. In support of this argument, plaintiffs argue that the Stipulation and Order cannot be considered final because it was modified by later Orders, specifically those of November 8, 2000, April 27, 2001, and May 15, 2001. *See* Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motions for Reconsideration at 6. They argue that the Court therefore is not bound by the strictures of Rule 60(b) in deciding whether to modify its Orders. *See* Conlon Motion at 3. This argument is unpersuasive. At the time the Court approved the July 14 Stipulation, its Order was intended

to be a final resolution of the deadlines involved in the Petition process. The fact that certain modifications were later made to the deadlines set out in the Stipulation and Order at the request of plaintiffs does not alter the fact that it was intended to be, and is, a final decision. The modifications made to it by the Court in its subsequent Orders were governed by Rule 60(b) of the Federal Rules of Civil Procedure, as are the modifications now requested. As discussed above, the changed circumstances cited by plaintiffs do not justify relief under Rule 60(b).

### C. Lack of Notice

■ In their reply brief, plaintiffs also raise for the first time the argument that a court presiding over a class action has the authority to deal with matters of notice to class members and to remedy lack of notice in individual cases. *See* Plaintiffs' Reply at 11–14. Plaintiffs appear to be offering this argument to augment their arguments for relief both under Rule 60(b) and under the Court's inherent equitable authority. They urge the Court to adopt the "excusable neglect" standard in determining whether to direct the Facilitator to consider the late-filed petitions for Monitor review as timely.

The Court notes as a threshold matter that all of the cases cited by plaintiffs involved claimants who were seeking either to file claims or opt-out requests out of time. *See* Plaintiffs' Reply at 11–14. In the instant case, all of the claimants had the opportunity to participate in the adjudicatory processes established by the Consent Decree and had their claims denied. By failing to meet the deadlines established by the Stipulation and Order, they

have lost only their opportunity to petition for Monitor review of those adverse decisions.

■ Under Rule 6(b) of the Federal Rules of Civil Procedure, a district court may for cause shown "in its discretion" enlarge the time within which an act required by an order of the court must be completed "where the failure to act was the result of excusable neglect." Fed. R.Civ.P. 6(b); *see also In re Vitamins Antitrust Class Actions,* 327 F.3d 1207, 1209 (D.C.Cir.2003).[5] Assuming that the "excusable neglect" standard would otherwise be applicable in this case, that standard has not been met. The factors involved in determining whether certain neglect was "excusable" include: the danger of prejudice to the non-movant; the length of the delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was within the reasonable control of the movant; and whether the movant acted in good faith. *See In re Pioneer Investment Services Co.,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *see also In re Vitamins Antitrust Class Actions,* 327 F.3d at 1209. As this Court found quite explicitly in its earlier Opinion, "defendant will 'be prejudiced to the tune of almost one million dollars' if the Court permits consideration of the late petitions and if even five percent of them are successful." *Pigford v. Veneman,* 265 F.Supp.2d at 50. Because this is not a case in which there is a limited settlement fund, the granting of relief to plaintiffs would necessarily result in actual prejudice to the defendant. Similarly, because the deadlines were negotiated

---

**5.** Defendants argue that the rationale of the cases cited by plaintiff is inapposite because the deadlines at issue in the instant case were not merely determined by the district court, but rather were the result of negotiations between the parties and therefore the deadlines

in the Stipulation and Order have legal significance because they are the result of a contract. Surreply at 7. Because the Court finds that the standard for excusable neglect is not met, it does not address whether the standard is applicable.

and agreed to by plaintiffs, it logically follows that the resulting failure to meet those deadlines had been within the reasonable control of plaintiffs. The Court therefore finds that the standard for excusable neglect is not met and that plaintiffs' request for relief must be denied.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

### ORDER

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that plaintiffs' motion for reconsideration of the Court's Order of June 2, 2003[808] is DENIED, and it is

FURTHER ORDERED that plaintiffs' motion for reconsideration of the Court's Order of June 2, 2003[807] is DENIED.

SO ORDERED.