**Timothy PIGFORD, et al., Plaintiffs,**

v.

**Ann M. VENEMAN, Secretary, United States Department of Agriculture, Defendant.**

**Cecil Brewington, et al., Plaintiffs,**

v.

**Ann M. Veneman, Secretary, United States Department of Agriculture, Defendant.**

**Nos. CIV.A. 97–1978 PLF, CIV.A. 98–1693 PLF.**

United States District Court, District of Columbia.

May 27, 2001.

Jacob A. Stein, Stein, Mitchell & Mezines, Washington, DC, Alexander John

Pires, Jr., Conlon, Frantz, Phelan & Pires, Washington, DC, Richard Talbot Seymour, Lieff, Cabraser, Heimann & Bernstein, LLP, New York City, John Michael Clifford, Mona Lyons, Clifford, Lyons & Garde, Washington, DC, Caroline Lewis Wolverton, U.S. Department of Justice, Washington, DC, Marcus B. Jimison, Durham, NC, Stephon J. Bowens, Durham, NC, Phillip L. Fraas, Tuttle, Taylor & Heron, Washington, DC, for Plaintiffs.

Daniel Edward Bensing, U.S. Attorney's Office, Washington, DC, Terry M. Henry, Susan Hall Lennon, Amanda Quester, U.S. Department of Justice Civil Division, Washington, DC, Michael Sitcov, U.S. Department of Justice Civil Division, Washington, DC, David Monro Sounders, Weiner Brodsky Sidman & Kider, PC, Washington, DC, Wyndell Oliver Banks, Washington, DC, for Defendants.

Randi Ilyse Roth, St. Paul, MN, Pro se.

Evans M. Folins, Los Valoros, CA, Pro se.

Dennis Charles Sweet, Lanston, Frazier, Sweet & Freese, Jackson, MS, Ford C. Ladd, Alexandria, VA, Gerald Robert Lear, Arlington, VA, for Movants.

### MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

On April 19, 2001, the Court held a status conference because of its concern about Class Counsel's repeated failures to meet court-ordered deadlines relating to Petitions for Monitor Review. The history of the petition process and counsel's past failures in meeting petition deadlines is set out in previous Court orders and will not be repeated here. *See* Order of Reference ¶ 8 (April 4, 2000) (establishing procedure); Stipulation and Order ¶ 5 (July 14, 2000) (establishing deadlines); Order of Nov. 8, 2000 (discussing Class Counsel's failures and modifying deadlines); Order of April 6, 2001 (recounting Class Counsel's continued failures to meet deadlines).

In particular, the Court was alarmed by Class Counsel's consistent failure to meet a modified schedule for filing petition materials that was established the last time counsel sought emergency relief from the deadlines. As reports from the Monitor demonstrate, Class Counsel failed to meet the minimum quota of 400 filings per month in any of the past four months. *See* Monitor Report for Period Ending Dec. 15, 2000 (showing that Class Counsel filed materials or withdrawals with respect to 399 claimants); Monitor Report for Period Ending Jan. 15, 2001 (showing filings with respect to only 315 claimants); Monitor Report for Period Ending Feb. 15, 2001 (showing filings with respect to only 282 claimants); Monitor Report for Period Ending March 15, 2001 (showing filings with respect to only 180 claimants). At the April 19 status conference, the Monitor reported that there were still up to 2,064 petitions yet to be filed by Class Counsel before the May 15 deadline.

Class Counsel's performance with respect to the Petition for Monitor Review process has been dismal. Despite signing a stipulation with the government in which they agreed to file a sizable yet finite number of petitions by November 13, 2000, and despite promising not to seek an extension of that deadline, Class Counsel sought equitable relief from the Court mere days before the deadline expired. *See* Plaintiffs' Expedited Motion for a Hearing to Resolve Problems with Track A Petition for Monitor Review Process (Oct. 31, 2000). Agreeing with Class Counsel's entreaty to spare the class from the consequences of counsel's admitted failures, the Court permitted what amounted to a six-month extension of the deadline over the vehement objection of

the government. As the Monitor's reports make clear, Class Counsel completely failed to take advantage of this extension, never meeting any of the monthly minimum requirements set by the Court.

At the April 19 status conference, Class Counsel made the remarkable admission that they never had a realistic expectation of meeting the November 13, 2000, deadline they had negotiated with the government, nor did they have any intention of meeting the modified May 15, 2001, deadline set by the Court. With respect to the initial deadline, Class Counsel conceded that they considered the November 13 deadline a "best estimate" of when they could complete more than 4000 Petitions for Monitor Review. With respect to the May 15 deadline, Class Counsel suggested that they never intended to meet the monthly quota of 400 petitions necessary to meet the deadline; instead they planned from the beginning to file between 350 and 400 petitions a month, then request an extension of time for the 500 or 600 petitions remaining when the deadline came.[1]

Equally remarkable, Class Counsel attempted to place blame for their lack of foresight and planning on everyone other than themselves. Counsel suggested that they were hindered by the Monitor's allegedly slow pace in deciding the first batch of Petitions for Monitor Review, by the government's alleged unwillingness to settle a dispute over attorneys' fees (with the alleged intent of sabotaging Class Counsel by depriving them of funds necessary to complete their obligations in this case), and even by the Court, who was purportedly just "wrong" when it decided against Class Counsel with respect to certain legal issues relating to their motion for attorneys' fees.

In an apparent attempt to further shift the blame from themselves to others, Class Counsel presented the Court with three options for resolving the instant deadline debacle: (1) the Court could grant Class Counsel another blanket extension of the deadlines so that they can file complete, thorough Petitions for Monitor Review; (2) the Court could allow counsel to file two-page informational petitions with the Monitor by the deadline, to be followed by complete petitions at some time in the future beyond the deadline; or (3) the Court could enforce the May 15 deadline and force the Monitor to accept what Class Counsel admits would be incomplete, inadequate petitions—to the acknowledged detriment of their clients. These are not real options. Class Counsel in effect asks for an indefinite extension of time so that they can complete what should have been completed six months ago (the first or second option) or, in the alternative, dares the Court to enforce the deadline (the third option) and be the cause of Class Counsel filing petitions that are substandard and likely to be rejected by the Monitor.

Class Counsel have earned accolades and acclaim for their efforts in initiating

---

1. Class Counsel gave no real explanation for their inability or unwillingness to marshal their resources in a way that would ensure that all petitions would be filed in a timely manner. The Court is left to wonder whether Class Counsel would be in the position in which they now find themselves had they not filed and pursued three new sister class actions in this Court at the same time they were attempting to complete their obligations in this case. *See Love v. Veneman,* Civil Action No. 00–2502(JR); *Garcia v. Veneman,* Civil Action No. 00–2445(LFO); *Keepseagle v. Veneman,* Civil Action No. 99–3119(WBB). Considering the significant amount of work left to be done in this case, the Court will informally confer with the judges to whom the *Love, Garcia* and *Keepseagle* cases have been assigned to determine whether those cases should be indefinitely stayed until Class Counsel can prove that they are able to manage even one class action, let alone four.

this case, litigating it to the verge of trial, and then negotiating a truly historic settlement with the government. By negotiating the Consent Decree that settled this case, Class Counsel benefitted tens of thousands of African American farmers claiming racial discrimination who otherwise would have remained mute and had no opportunity to obtain redress. Counsel's negligent handling of the final stages of this case, however, runs the risk of jeopardizing counsel's prior accomplishments. Class Counsel's miscalculations, left unremedied, could mean that literally thousands of farmers with possibly meritorious claims will be left without recourse due solely to counsel's myopia; counsel's conduct borders on legal malpractice. The brazenness with which Class Counsel have disregarded the deadlines first established in the Stipulation and Order they negotiated with the government and then modified by the Court's Order of November 8, 2000, appears to be the result of counsel's impression that no matter how poorly they perform their obligations, the Court would never let their failings adversely affect the class and would always come to the rescue.

Recognizing its obligation to ensure that the Consent Decree and subsequent orders are enforced in a manner commensurate with both the letter and the spirit of the parties' agreements and the Court's orders, the Court is still considering whether to exercise its equitable powers and grant an extension of time for the filing of Petitions of Monitor Review. Regardless of its decision, Class Counsel will be held accountable for their actions. If the Court ultimately decides to grant an extension beyond May 15, 2001, it will impose a progressive schedule of fines against Class Counsel for breaching their agreement with the government, memorialized in the Court's Stipulation and Order of July 14, 2000, and for deliberately violating the Court's Order of November 8, 2000.[2]

Furthermore, the Court will not permit Class Counsel to file two-page "informational" petitions, as proposed by counsel at the status conference. Class Counsel is obligated to provide full, fair and adequate representation for all of their clients, not just those who were lucky enough to be at the top of counsel's list ten months ago when they first negotiated the deadlines. Counsel shall file fully researched, fully briefed, fully documented materials in support of all remaining Petitions for Monitor Review, or withdrawals of those petitions, where appropriate. If the Court determines at a later date that Counsel has shirked any of their responsibilities with respect to the filing of these materials and/or withdrawals, the Court will impose fines and sanctions beyond those outlined below.

Finally, it is clear to the Court that Class Counsel will be unable to meet their obligations, even with an extension of time, without the assistance of additional counsel. The Court is encouraged by Class Counsel's belated acknowledgment at the April 19 status conference that they would need to rely on outside counsel—prefera-

2. As part of the bargain struck between the parties and approved by the Court in the Order of July 14, 2000, Class Counsel agreed to meet the 120 day deadline in return for the government's agreement to admit more than 1,100 Track A claimants into the class who otherwise would have been excluded. Based on the current success rate of roughly 60% and a cash award of $50,000 per claimant, this means that the agreement will cost the government *at least* $33 million in damages alone—not to mention the cost of providing debt relief for those same claimants, as well as the financial and personnel drain on the Departments of Agriculture and Justice. While the schedule of fees outlined below, if implemented, would not fully recompense the government for Class Counsel's flagrant breach of the agreement, it would provide at least a degree of compensation.

bly *pro bono* counsel—to assist with the filing of Petitions for Monitor Review after proper training. The Court also supports Class Counsel's attempts to find *pro bono* counsel to assist with the representation of Track B claimants. Such assistance would undoubtedly result in Class Counsel having more time to concentrate on Petitions for Monitor Review, something to this point they have not been able or willing to do.

To this end, Class Counsel, the Monitor and/or the Court have spoken with several individuals—including Robert N. Weiner of Arnold & Porter, chair of the ABA Committee on Pro Bono and Public Services, Susan Hoffman of Crowell & Moring, and Steven B. Scudder, the ABA Committee's staff person—who might be able to assemble a team of *pro bono* lawyers to assist Class Counsel on an emergency basis. The Court understands that Class Counsel have arranged a meeting on May 1, 2001, with Mr. Weiner, Ms. Hoffman, Mr. Scudder and representatives from District of Columbia law firms who might be willing to assist in dealing with the crisis. The Court is considering whether to ask the Monitor to attend this meeting, as well.

Upon consideration of the foregoing, it is hereby

ORDERED that all deadlines set forth in the Court's Order of November 8, 2000, are suspended until further order of the Court; it is

FURTHER ORDERED that if the Court ultimately decides to grant an extension of time beyond May 15, 2001, it will impose a progressive schedule of fines against Class Counsel. After all petitions on Class Counsel's Register of Petitions have been supplemented or withdrawn, Class Counsel will be fined for each day after May 15, 2001, that their obligation was not complete. Class Counsel will be fined $1,000 for each day during the first month after the deadline that all supporting materials or withdrawals were not filed, they will be fined $2,000 for each day during the second month after the deadline that all supporting materials or withdrawals were not filed, they will be fined $3,000 for each day during the third month after the deadline that all that all supporting materials or withdrawals were not filed, and so on. Fines collected from Class Counsel will be placed in the Court Registry until such time as the Court rules on a proper motion for attorneys' fees or when the parties settle the current attorneys' fees dispute; at such time the Court will order that all funds in the Registry be paid to the government; and it is

FURTHER ORDERED that if after meeting on May 1, 2001, Class Counsel determine that an extension of time beyond the May 15, 2001, deadline will be needed to complete the petition process in a professional manner, counsel shall file a motion seeking such an extension. The motion shall propose a realistic schedule for completing the petition process and shall provide the details of any plan to incorporate additional counsel (including an explanation of how such counsel would be trained and precisely how they would be utilized). If such a motion is necessary, it shall be filed and hand delivered to Chambers and government counsel by May 4, 2001, at 4:00 p.m.; a response from the government, if any, shall be filed and hand delivered to Chambers and Class Counsel by May 8, 2001, at 4:00 p.m.

SO ORDERED.