**Timothy PIGFORD, et al., Plaintiffs,**

**v.**

**Ann VENEMAN, Secretary, United States Department of Agriculture, Defendant.**

**Cecil Brewington, et al., Plaintiffs,**

**v.**

**Ann Veneman, Secretary, United States Department of Agriculture, Defendant.**

**Nos. CIV.A.97–1978(PLF), CIV.A.98–1693(PLF).**

United States District Court, District of Columbia.

March 10, 2004.

Alexander John Pires, Jr., Conlon, Frantz, Phelan & Pires, Washington, DC, Anthony Herman, Covington & Burling, Washington, DC, David A. Branch, Law Office of David A. Branch, Washington, DC, Jacob A. Stein, Stein, Mitchell & Mezines, Washington, DC, Richard Talbot Seymour, Lieff, Cabraser, Heimann & Bernstein, LLP, Washington, DC, J. L. Chestnut, Jr., Chestnut, Sanders, Sanders, Pettaway, Campbell & Albright, Selma, AL, Mona Lyons, Clifford, Lyons & Garde, Caroline Lewis Wolverton, Washington, DC, Stephon J. Bowens, North Carolina Association of Black Lawyers, Marcus B. Jimison, Durham, NC Phillip L. Fraas, Hogan & Hartson, Washington, DC, for Plaintiffs.

Elizabeth Goitein, Michael Sitcov, Terry M. Henry, Marsha Stelson Edney, U.S. Department of Justice, Washington, DC, for Defendants.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

The Court has before it one motion to vacate the sanctions imposed by the Court in its May 15, 2001 Memorandum Opinion and Order and one motion for reconsideration of the sanctions. The first motion was filed by class counsel Alexander Pires and class counsel Phillip Fraas on September 25, 2001. The second motion was filed by class counsel J.L. Chestnut and his partner Rose Sanders on September 13, 2002. On February 3, 2003, defendant filed a supplemental memorandum regarding sanctions pursuant to the Court's Order of December 30, 2002. Upon consideration of class counsels' motions, defendant's responses, class counsels' replies, defendant's supplemental memorandum, class counsels' opposition and defendant's reply, the Court has concluded that class coun-

sels' motions must be denied. The Court will specify the fines that are to be imposed.

## I. BACKGROUND

Many of the facts surrounding these sanctions were discussed in this Court's Opinion of this same day denying two motions for reconsideration of a previous Order of the Court. The Court therefore will only briefly summarize them here. On April 14, 1999, the Court approved and entered a Consent Decree which established an adjudication and arbitration process for the claims of race discrimination of those class members who opted to have their claims resolved under the Consent Decree. *See Pigford v. Glickman,* 185 F.R.D. 82 (D.D.C.1999), *aff'd,* 206 F.3d 1212 (D.C.Cir.2000). The Consent Decree provided that the Court would appoint an independent Monitor and that the Monitor would have the authority to direct the facilitator, adjudicator, or arbitrator to re-examine a claim if the Monitor determined that a "clear and manifest error" had occurred and had resulted in, or was likely to result in, a "fundamental miscarriage of justice." Consent Decree ¶ 12(b)(iii). The Consent Decree did not provide a time limit within which a claimant could petition for Monitor review of his or her claim. *See id.*[1]

To bring finality to the proceedings under the Consent Decree, the parties stipulated on July 14, 2000, that any claimant who had already received an adverse decision from the Adjudicator would have 120 days from the date of the Order, until November 13, 2000, to file a petition for Monitor review under the Consent Decree. *See* July 14, 2000 Stipulation and Order

---

1. The Monitor's appointment, however, was to last for a period of five years. *See* Consent Decree ¶ 12.

("Stipulation and Order") at 4.[2] All future claimants would have 120 days from the date of their adverse decision. *Id.* The Stipulation specifically provided that "[n]o extensions of these deadlines will be granted for any reason." *Id.* The Court approved this Stipulation. *Id.*

The Court provided in a later Order that instead of filing fully supported petitions for Monitor review, counsel could instead submit a Register of Petitions that would list all claimants who received a decision prior to the July 14, 2000 Stipulation and Order and had asked for assistance with the filing of his or her petition for Monitor review. *See Pigford v. Veneman,* No. 97–1978, 2000 U.S. Dist. LEXIS 16374, *9 (D.D.C. Nov. 8, 2000). The Order laid out a time frame for filing fully supported petitions and withdrawals and provided that all petitions and withdrawals had to be filed no later than May 15, 2001. *See id.* On April 27, 2001, the Court temporarily suspended the deadlines set forth in the November 8, 2000 Order while it considered whether to extend the time for filing petitions for Monitor review. *See Pigford v. Veneman,* 144 F.Supp.2d 16, 20 (D.D.C.2001). It also announced that if a change to the deadline ultimately were to be granted, the Court would impose a progressive schedule of daily fines on class counsel. *See id.* The Order provided that class counsel would be fined for each day after May 15, 2001 that they had not completed the petition process:

> Class Counsel will be fined $1,000 for each day during the first month after the [May 15, 2001] deadline that all supporting materials or withdrawals were not filed, they will be fined $2,000 for each day during the second month after the [May 15, 2001] deadline that all supporting materials or withdrawals were not filed, they will be fined $3,000 for each day during the third month after the [May 15, 2001] deadline that all supporting materials or withdrawals were not filed, and so on.

*Id.*

On May 15, 2001, the Court permanently suspended the deadlines and reluctantly changed the deadline for filing supporting materials and withdrawals, setting a final deadline of September 15, 2001 to complete the petition process. *See Pigford v. Veneman,* 143 F.Supp.2d 28, 31 (D.D.C. 2001). The Court then imposed the schedule of fines announced in the April 27, 2001 Order, adding that class counsel would be fined $4,000 for each day during the fourth month after May 15, 2001 that all supporting materials or withdrawals were not filed. *See id.* at 32. The Order further provided that "for each petition that the Monitor reports was not supported or withdrawn by the ultimate deadline of September 15, 2001, Class Counsel will be fined $50,000." *Id.* As of September 15, 2001, the final deadline set by the Order, class counsel had accumulated $308,000 in fines.[3]

---

**2.** On behalf of plaintiffs, the stipulation was signed by class counsel, Alexander Pires and Phillip L. Fraas. Also listed were of counsel: J.L. Chestnut; Othello Cross; Willie Smith; Gerald R. Lear and Hubbard I. Sanders. *See* July 14, 2000 Stip. On December 22, 2000, the Court issued an Order amending the Consent Decree to include J.L. Chestnut as class counsel. *See* December 22, 2000 Order.

**3.** Sanctions are calculated as follows: $1,000 per day for 31 days (May 16 to June 15); $2,000 per day for 30 days (June 16 to July 15); $3000 per day for 31 days (July 16 to August 15); and $4,000 per day for 31 days (August 16 to September 15). This value assumes that all petitions were either filed or withdrawn by the September 15, 2001 deadline.

At the time of the briefing on the sanctions issues, there was a pending motion for relief for four groups of claimants who had filed untimely petitions for Monitor review. Defendant had suggested that if the filing of those petitions was permitted, it would be appropriate to sanction class counsel for successful petitions. *See* Defendant's Memorandum Regarding Sanctions to be Imposed

As of November 2001, attorneys from Covington and Burling ("Covington") were serving as *pro bono* "plaintiffs' counsel" in sixteen Track B cases. On November 7, 2001, class counsel filed a notice of intention to produce files to *pro bono* counsel and then released several hundred Track A files to Covington. Defendant moved for emergency enforcement of the Second Amended Supplemental Privacy Act Protective Order ("Protective Order") and for sanctions. The Protective Order had set guidelines regarding who could obtain USDA files, or information contained in those files, and under what conditions. Although Covington attorneys were serving as plaintiffs' counsel for certain claimants and therefore would have been authorized under the Protective Order to receive files *from the government,* class counsel was not authorized to release any files to Covington. *See Pigford v. Veneman,* 182 F.Supp.2d 53, 55 (D.D.C.2002). Because Covington was solicited by class counsel and by the Court to assist in representing certain Track B claimants, the Court nevertheless determined that it would be unfair to deny Covington the benefits of access to Track A files that class counsel would have been free to consult had they still been representing the Track B claimants. *See id.* at 56–57. Covington therefore was permitted to retain the files improperly released by class counsel. *See id.*

The Court found that class counsel's violation of the Protective Order was "both knowing and willful" in view of the Notice of Intention served by class counsel, and that the Court would "seriously consider imposing sanctions" on class counsel. *Pigford v. Veneman,* 182 F.Supp.2d at 57. The actual decision on the sanctions was postponed until such time as the Court addressed all of the potential sanctions against class counsel. *See id.* Class counsel were permanently enjoined from releasing protected files to any *pro bono* counsel in the future. *See id.* The Court is not aware of any violation of this injunction and presumes that class counsel have honored the terms of the Order.

## II. DISCUSSION

### A. *Progressive Schedule of Fines*

#### 1. Criminal v. Civil Sanctions

Class counsel first argues that the progressive schedule of fines imposed by the Court's Orders constitutes criminal sanctions and that such sanctions cannot be imposed without a criminal trial. *See* Class Counsel's Motion to Vacate the Sanctions Set Forth in the April 27, 2001 Memorandum Opinion and Order and the May 15, 2001 Memorandum Opinion and Order of the Court ("Mot. Vacate Sanctions") at 30.

 The Court has both an inherent and a statutory power to enforce compliance with its orders and may exercise that authority through a civil contempt proceeding. *See Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *United States v. United Mine Workers of America,* 330 U.S. 258, 330–32, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Petties v. District of Columbia,* 897 F.Supp. 626, 629 (D.D.C.1995); *Securities and Exchange Commission v. Bankers Alliance Corp.,* 881 F.Supp. 673, 678 (D.D.C. 1995). "A party commits contempt when it violates a definite and specific court

upon Class Counsel and Of Counsel to the Class filed pursuant to Order of December 30, 2002 ("Def. Sanctions Mem.") at 7–8. On June 2, 2003, the Court issued an Order denying relief for those claimants whose petitions for Monitor review had been deemed untime-ly because they missed deadlines imposed by the Stipulation and Order. In an Opinion and Order issued this same day, the Court denied plaintiffs' motion for a reconsideration of the June 2, 2003 decision.

order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Securities and Exchange Commission v. Bankers Alliance Corp.*, 881 F.Supp. at 678. Civil contempt is a remedial device intended to achieve full compliance with a court's order. *See Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Hicks v. Feiock*, 485 U.S. 624, 631–32, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). A contempt fine therefore is civil and remedial—not criminal—if it either "coerces the defendant into compliance with the court's order, [or] ... compensates the complainant for losses sustained." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. at 829 (citing *United States v. United Mine Workers of America*, 330 U.S. at 303–304).

### a. Compensatory Fines

"As a part of the bargain struck between the parties and approved by the Court in the Order of July 14, 2000, Class Counsel agreed to meet the 120 day deadline [for filing petitions for Monitor review] in return for the government's agreement to admit more than 1,100 Track A claimants into the class who otherwise would have been excluded." *Pigford v. Veneman*, 144 F.Supp.2d at 19 n. 2. The government abided by the terms of the agreement, but class counsel failed to meet its deadline. *See id.*

■ The government argues that the sanctions imposed by the Court's orders serve a function of being "partially compensatory" for class counsel's breach. *See* Defendant's Response to Motion of Class Counsel to Vacate the Sanctions Set Forth in the April 27, 2001 Memorandum Opinion and Order of the Court and the May 15, 2001 Memorandum Opinion and Order of the Court ("Def.Resp.") at 11 n. 11. The Court has previously expressed this same

sentiment, noting that although the schedule of fees would not "fully recompense" the government, it would "provide at least a degree of compensation." *Pigford v. Veneman*, 144 F.Supp.2d at 19 n. 2. In exchange for class counsel agreeing to deadlines for petitions for Monitor review, the government gave up its right to contest approximately 1,100 untimely filed claims. *See id.* Assuming a 60% success rate in Track A claims, allowing those claims to proceed was a governmental concession worth at least $33 million in class member relief. *See id.* Because class counsel failed to comply with the deadlines imposed by the agree-to Stipulation and Order, the government did not realize the intended benefit of its bargain, and the sanctions imposed by the Court therefore are compensatory in nature.

### b. Coercive Fines

■ Even assuming the sanctions were not compensatory, they still would be civil in nature. "Civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and opportunity to be heard." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. at 826, 114 S.Ct. 2552. The Court imposed a per diem fine on class counsel for each day they failed to submit the completed petitions for Monitor review. As soon as class counsel fully complied with the Court's Order, the accumulation of fines ceased. Although the Supreme Court held in *Bagwell* that certain fixed fines for prospective conduct that violates a court order may be characterized as punitive in nature, the D.C. Circuit has noted that the *Bagwell* decision "did not call into question the traditional classification of *some* categories of contempt sanctions—compensatory fines,

coercive imprisonment, and *per diem fines to coerce compliance with affirmative court orders*—as civil in nature." *National Organization for Women v. Operation Rescue*, 37 F.3d 646, 659 (D.C.Cir.1994) (emphasis added). "A close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. at 829, 114 S.Ct. 2552.

Class counsel contends that the sanctions at issue were more closely akin to a suspended, determinate fine than a per diem fine. *See* Mot. Vacate Sanctions at 38. Class counsel relies heavily on the court of appeals' decision in *Evans v. Williams*, 206 F.3d 1292 (D.C.Cir.2000), to support their position that the instant sanctions were punitive. The district court in *Evans* had adopted a plan by which whenever defendant District of Columbia failed to pay a vendor's invoice within thirty days, a fine would be imposed. *See Evans v. Williams*, 206 F.3d at 1294. In finding that these fines constituted criminal contempt, the court of appeals noted that "each missed payment was a separate violation of the consent decree and a separate act of contempt." *Id.* at 1296. The court determined that it was "improper to regard the District as capable of purging itself of contempt by paying a bill before the thirtieth day—it simply was not in contempt until it failed to pay on the thirtieth day." *Id.* In this case, by contrast, there is only one deadline at issue. Class counsel was put on notice on April 27, 2001 that the Court was considering instituting a daily fine that would continue every day after May 15, 2001 until class counsel complied with the Court's Order. Class counsel was in contempt for the same act, failing to timely complete the petition process, throughout the entire sanctions period. Class counsel could have halted the accumulation of fines at any time by complying with the Court's Order. The fines imposed on class counsel therefore were not criminal in nature.

*Evans* can be further distinguished in that the court of appeals focused on the nature of the injunction itself as "key" both to the Supreme Court's finding of criminal contempt in *Bagwell* and the court of appeals' own finding in *Evans*. *See Evans v. Williams*, 206 F.3d at 1296. The court of appeals noted that the injunction that defendant had been sanctioned for violating established a "detailed code of conduct" through which the court was governing "an entire governmental program in the District of Columbia." *Id.* at 1296–97. "When a district judge assumes the responsibility to regulate the activities of a large institution and then seeks to identify and punish violators of his or her injunction, he or she comes perilously close to fusing the powers which our Constitution separates." *Id.* at 1297. There is no such concern in this case. The Court ordered only that class counsel timely submit petitions for Monitor review, as it had previously agreed to do in a Stipulation with the government. When class counsel failed to meet the deadlines they had agreed to and then those ordered by the Court, the Court instituted a daily fine as a "financial incentive" to encourage class counsel to comply expeditiously with the Court's Order. The per diem, coercive fine imposed on class counsel in this case is the epitome of a civil sanction.

### 2. Impossibility

Class counsel next argue that sanctions are not appropriate because it was impossible for class counsel to meet the November 2000 deadline or the May 2001 deadline. "[I]mpossibility of performance constitutes a defense to a charge

of contempt[,] and a respondent who raises the defense of impossibility must demonstrate his inability to comply categorically and in detail," despite its good faith efforts. *Securities and Exchange Commission v. Bankers Alliance Corp.*, 881 F.Supp. at 678; *see Evans v. Williams*, 206 F.3d at 1299; *Tinsley v. Mitchell*, 804 F.2d 1254, 1256 (D.C.Cir.1986). When a district court determines, however, that a contemnor has "not done all within its power" to comply with the court's orders, contempt may be appropriate even where compliance is difficult. *Twelve John Does v. District of Columbia*, 855 F.2d 874, 877 (D.C.Cir.1988).

▆ Class counsel agreed to the deadlines imposed by the July 14, 2000 Stipulation and Order and maintained that they could complete the petition process within four months. The Stipulation and Order specifically provided that "no extensions of these deadlines will be granted for any reason." Stipulation and Order at 4. Despite being granted an additional six months by the Court, class counsel still failed to fulfill its responsibilities. Particularly since class counsel negotiated for the deadlines in question and agreed to them in advance, and in view of the "no extensions . . . for any reason" language in the Stipulation and Order, the Court finds that class counsel has not demonstrated that it should be relieved from civil contempt on grounds of impossibility.

### 3. Due Process

▆ Class counsel also argue that they were deprived of due process because the fines were imposed without prior notice from the Court and because class counsel did not receive any opportunity to be heard. But class counsel were given notice in the April 27, 2001 Memorandum Opinion and Order that fines would begin to accrue after the May 15, 2001 deadline. That message was reiterated in the Memorandum Opinion and Order of May 15, 2001. The accumulation of fines could have been avoided at any time through compliance with the Court's Order. Even were such notice not sufficient, the issues involved have been exhaustively briefed since the time of class counsel's motion. The imposition of the sanctions has been suspended for nearly two years while the matter has been extensively briefed and carefully considered.

▆ As for a hearing, due process does not require a hearing every time sanctions are imposed. *See LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 907 (D.C.Cir. 1998); *McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C.Cir.1986) ("While it is perhaps conceivable that due process could require a hearing on sanctions under [Fed. R.Civ.P. 11] in certain circumstances, [appellant] offers no basis for any further proceedings on that subject here."). Moreover, on December 11, 2002, the parties appeared for a status conference to discuss, among other topics, the "consolidated issue of fees and sanctions." November 22, 2002 Order at 2. Although the December 11, 2002 status conference was not a "hearing" on the issue of sanctions in the traditional sense, it gave the parties the opportunity to air their views with the Court for nearly ninety minutes.[4] The Court has determined that no further hearing is necessary in this case and that class counsel's right to due process has been satisfied.

---

4. Moreover, during that hearing, class counsel Alexander Pires said, with respect to the issue of sanctions: "I can speak on behalf of my firm. We are more than willing to pay any reasonable penalty to resolve this for all kinds of obvious reasons." Transcript of December 11, 2002 Hearing at 6; *see id.* at 39 ("I'll pay the whole thing out of my pocket, I don't mind, to bring this to an end.").

### 4. Chestnut, Sanders, Sanders, Pettaway and Campbell

At the time the sanctions were imposed, the Court did not delineate between the various attorneys and firms involved in the Court's imposition of a progressive schedule of fines against "class counsel." *Pigford v. Veneman*, 144 F.Supp.2d 16 at 20. In addition to challenging the imposition of the sanctions themselves, Chestnut, Sanders, Sanders, Pettaway, Campbell & Albright, LLC ("Chestnut") also contends in its motion for reconsideration that it should be relieved of liability because Mr. Chestnut was named as class counsel only after the July 14, 2000 Stipulation and Order was signed and only after class counsel missed the key November 2000 deadline. *See supra* note 2. The Court makes no findings in this Opinion regarding who was involved in and aware of the negotiation of the July 14, 2000 Stipulation and Order and to what extent responsibility for the actions predating the sanctions attaches to which class counsel. The Court declines to allocate the $308,000 fine between the various counsel and is confident that counsel can decide among themselves the fairest method of allocating the payment to the government.

### B. Sanctions for Failure to Meet September 15, 2001 Deadline

The Court's Order of May 15, 2001 also provided that class counsel would be fined $50,000 for each petition that the Monitor reported was not supported or withdrawn by the ultimate deadline of September 15, 2001. Defendants argue that class counsel should be sanctioned for any petition that was filed or supplemented after September 15, 2001 and that resulted in an award for the claimant. *See* Def. Sanctions Mem. at 7–8. All of the petitions listed on the Register were either supported or withdrawn by the September 15, 2001 deadline. *See* Monitor's Final September 2001 Report Regarding Registers of Petitions at 7. The only remaining petitions that could be construed as triggering this sanction were those included in class counsel's motion for relief for four groups of claimants. Subsequent to the briefing on the sanctions issue, however, the Court denied relief to the claimants in question and declined to allow the untimely petitions for Monitor review to be filed. *See Pigford v. Veneman*, 265 F.Supp.2d 41 (D.D.C.2003). In an Opinion and Ordered entered this same day, the Court has declined to reconsider that decision. *See* March 10, 2004 Opinion and Order. Thus, all petitions listed on the Register were either fully supported or withdrawn by the September 15, 2001 deadline and any question regarding these sanctions is moot.[5]

### C. Sanctions for Violation of Second Supplemental Privacy Act Protective Order

In its Order of January 17, 2002, the Court noted that it would consider imposing sanctions on class counsel for the release of hundreds of Track A files to Covington. The government maintains that "any fees, costs, and expenses to which class and of counsel otherwise may be entitled should be reduced" as a sanction for these violations of the Protective Order. Def. Sanctions Mem. at 12. The government proposes that an "easily calculable" option for reducing any fee award would be to assess a $1,000 reduction in fees for each disclosure of an individual's Privacy Act-protected records. *Id.* at 14 n. 16.[6]

---

5. Because this issue is moot, the Court declines to determine whether these petitions, if allowed, would have triggered sanctions.

6. The government contends that it would be appropriate to sanction class and of counsel in the same manner that the government would have been sanctioned had it willfully and intentionally disclosed Privacy Act-protected records, which would have been actual damages or $1,000, whichever was greater. Def. Sanctions Mem. at 13.

In its January 17, 2002 Memorandum Opinion and Order, the Court "closely reviewed the language" of the Protective Order and concluded that class counsel violated the Protective Order by releasing Track A files to Covington and that they did so "both knowing[ly] and willful[ly]." *Pigford v. Veneman*, 182 F.Supp.2d at 55, 57. Class counsel concedes that they incorrectly interpreted the Protective Order in releasing the protected information to *pro bono* counsel. Plaintiffs' Opposition to Defendant's Memorandum Regarding Sanctions to be Imposed Upon Class Counsel and Of Counsel to the Class Filed Pursuant to Order of December 30, 2002 at 8. They contend, however, that civil contempt sanctions are not appropriate because no actual harm resulted from the sharing of the files. *Id.* The Court is inclined to agree. The Court ordered that no more files be improperly released by class counsel and none have been. Had Covington gone directly to the government with the request for white farmer files, this Court would have expected the government to produce files in compliance with both the spirit and the letter of the Consent Decree. Moreover, government compliance with the request would have been fully authorized by the Second Supplemental Security Act Protective Order. *See* Protective Order at 1–2. Although class counsel's conduct in violation of the Protective Order cannot be excused or condoned, no harm resulted from the improper release of the files to Covington. *See Pigford v. Veneman*, 182 F.Supp.2d at 56–57. The Court therefore declines to impose monetary sanctions for class counsels' violation of the Protective Order.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

## *ORDER*

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that class counsel shall be fined $308,000 in accordance with the progressive schedule of fines announced in this Court's Order of May 15, 2001. These fines will be suspended until such time as the pending motions for attorneys' fees have been resolved. At that time, the fines shall be paid to the government (or deducted from the government's payment of fees to class counsel); it is

FURTHER ORDERED that civil contempt sanctions will not be imposed on class counsel for violations of the Second Supplemental Privacy Act Protective Order; it is

FURTHER ORDERED that J.L. Chestnut and Rose M. Sanders' motion for reconsideration [668] is DENIED; and it is

FURTHER ORDERED that class counsel's motion to vacate [526] is DENIED.

SO ORDERED.